### PUGH, *Appellant*, *v.* HAYES *et al.*

#### Division One, January 23, 1893.

1. **Statute of Uses:** ACTIVE TRUSTS. Active trusts are not executed by our statute of uses. (Revised Statutes, 1879, sec. 3938.)

2. ———: ———. Where an estate is limited to a trustee to pay the rents and profits to another person for life, the trustee takes the legal estate, for he must receive them before he can make the payments.

3. ———: DRY TRUSTS. Where the estate is limited to a trustee to permit and suffer another to have the rents, the statute vests the legal estate in such other person, because the trustee has no duties to perform.

4. ———: TRUSTEE: ACTIVE DUTIES. Where, however, any duty is imposed, either expressly or by implication, on the trustee, the legal title will remain in him unaffected by the statute of uses.

5. ———: ———: ———. Where a testator directed his executor to convert his estate into money and to invest one third of it, with the consent of the widow, in lands in this state, the income therefrom to "go and be for the use of" his widow during her life, in lieu of dower, and provided that after her death the land should be divided among his children, the trustee has control and supervision of the lands during the life of the widow and the legal title thereto remains in him until her death.

Pugh v. Hayes.

6. ———: ———: ———: EXECUTION. Such title is not subject to a decree vesting it in one as purchaser of the property at an execution sale under a judgment against the widow.

7. ———: ———: ———: ———. Whether the income arising from the land could be subjected to the payment of the judgment against the widow not decided.

*Appeal from Franklin Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*J. C. Kiskaddon* for appellant.

(1) A use, a trust and a confidence is one and the same thing, and, if an estate is conveyed to one person for the use of, or upon a trust for another, and nothing more is said, the statute immediately transfers the legal estate to the use and no trust is created. 1 Perry on Trusts [4 Ed.] sec. 298; *Terry v. Colber*, 11 East, 377; *Right v. Smith*, 12 East, 454; *Broughton v. Langley*, 2 Salk. 679; *Parks v. Parks*, 9 Paige (N. Y.), 107; Revised Statute, 1889, ch. 168; 1 Sanders on Uses [2 Am. Ed.] * 86, *et seq.* (2) No precise form of words is necessary to declare a use. "A very slight thing," or, "words, though very improper," will serve the purpose. *Nightingale v. Ferrar*, 3 P. Will. 206, 208. And if the trust is to permit or suffer the *cestui que use* to receive rents, profits, etc., the statute executes the use. *Waggstaff v. Smith*, 9 Ves. 520; *Doe v. Biggs*, 2 Taunt. 109; *Gregory v. Henderson*, 4 Taunt. 772; *Laurens v. Jenney*, 1 Spear (S. C.) 356. (3) In this case "the income of said lands shall go to and be for the use of my beloved wife." A use has been defined to be the equitable right to take the "profits" of an estate. *Sloan v. Baker*, 8 Mass. 438; *People v. Supervisors*, 4 Hill (N. Y.), 20; *Simm's Appeal*, 44 Pa. St. 345; *Betts v. Betts*, 4 Abbott's New Cases (N. Y.)

317, 400. (4) There is nothing in the will giving the executor any control over the lands in Missouri. The moment he purchases the lands his power ceases. (5) And, where the necessity of protecting the present or future estate ceases, the statute immediately executes the use. Thus, where property is settled on a married woman to her sole and separate use, as soon as the marriage relation terminates by death or otherwise the statute executes the use. *Roberts v. Moseley*, 51 Mo. 282; *Baker v. Nall*, 59 Mo. 265. (6) It was the duty of the executor to invest the money in accordance with the terms of the will. 2 Perry on Trusts [4 Ed.] sec. 452, 460, 461. (7) From whatever source the purchase money of land comes, if it was intended to be for the benefit of one person, and some other person uses it to purchase land in his own name, then the latter person holds the legal title in trust for the first. 1 Perry on Trusts [4 Ed.] secs. 124, 125, 127; *Kelly v. Johnson*, 28 Mo. 249; *Miller v. Davis*, 50 Mo. 572; *Key v. Jennings*, 66 Mo. 356; *Shaw v. Shaw*, 86 Mo. 594. (8) And the *cestui que trust* can call on the trustee to execute the trust, or to declare the uses under which he holds the legal title, and if such declaration is within the statute of uses the legal title is immediately vested in the *cestui que trust*. 1 Greenleaf Cruise, * 338; 1 Perry on Trusts, [4 Ed.] sec. 165a; 1 Sanders on Uses [2 Am. Ed.] * 86, *et seq.; Walden v. Skinner*, 11 Otto, 577. (9) Such resulting trust can be sold on execution against the *cestui que trust*. *Ranken v. Harper*, 23 Mo. 579; *Bobb v. Woodward*, 50 Mo. 95; *Lionberger v. Baker*, 88 Mo. 447; *Gentry v. Robinson*, 55 Mo. 260; *Morgan v. Bouse*, 53 Mo. 219. (10) Property held in trust is liable for the debts of the *cestui que trust*. Bispham's Equity, sec. 61; *McIlvaine v. Smith*, 42 Mo. 45; *Pickens v. Dorris*, 20 Mo. App. 1. (11) Nor can the liability of the estate to sale under

execution be avoided on the ground that it was given in lieu of dower, for dower consummate .is in this state vendible under execution against the dowress. *Waller v. Mardus*, 29 Mo. 25. (12) To prevent property given under a will or settlement being charged with or liable for the debts of the donee, the instrument must expressly declare that intention. *Lampert v. Haydel*, 20 Mo. App. 616; *Pickens v. Dorris*, 20 Mo. App. 1; *McIlvaine v. Smith*, 42 Mo. 45.

*T. A. Lowe* for respondents.

(1) Where a power is given by will or deed to an executor of trustee, the execution of which is not contrary to law or public policy, and which is free from fraud, and the trustee is in the act of and is willing to execute the trust according to direction, then courts will not interfere with such trustees, nor direct a different disposition of the property or estate than that intended by the testator or donee of the power and property, but will give effect to the intent of the testator. 4 Kent's Commentaries [8 Ed.] pp. 326, 327; 1 Perry on Trusts, secs. 359, 386a; 2 Perry on Trusts, secs. 508, 509, 510, 511; *Owens v. Switzer*, 51 Mo. 322; *Owens v. Ellis*, 64 Mo. 77; *Coil v. Pitman's Adm'r*, 46 Mo. 51; *Haydel v. Hurck*, 72 Mo. 253; *Lambert v. Haydel*, 96 Mo. 439; *Partridge v. Cavender*, 96 Mo. 452. (2) There was no restraint upon alienation by the then expectant widow, for the testator bestowed absolutely nothing upon her which she could alien. He simply conferred a naked power upon the executor to convert the realty into money and loan or invest one third of it in stocks, or reinvest in other lands in Missouri, showing an evident intention of withholding from her both the legal title as well as the control of his property, and thus placing the property beyond the reach of her cred-

itors, and his widow from the vicissitudes of fortune. The *intention* of the testator is to be gathered from the whole scope of the will. Section 8916, Revised Statutes, 1889. Courts shall have due regard to the directions of the will, and the true intent and meaning of the testator. In *Lambert v. Haydel*, 96 Mo., the court say: "The effectuation of the gift just as the author intended it to be effectuated." *Smith v. Hutchinson*, 61 Mo. 83; *Allison's Ex'r v. Channey*, 63 Mo. 279; *Bozarth v. Bozarth's Ex'r*, 24 Mo. 320; *Collier's Will*, 40 Mo. 287; *Hazel v. Hogan*, 40 Mo. 277. (3) This property having been devised to an executory trustee by a dying husband and father, inspired by the holiest sentiments of the human heart, and being reasonable in extent and duration, with no motive to defraud, he had a right to place his property in such a position as to amount to a restraint upon both the voluntary alienation by the object of his affection and bounty, and by proceedings *in invitum*, and such trusts have judicially prevailed as against judicial sales, as shown by the following authorities: 1 Perry on Trusts, sec. 118, p. 127; *Bramhall v. Ferris*, 14 N. Y. 44; *White v. White*, 30 Vt. 342; *Rife v. Geiger*, 59 Pa. St. 393; *Wells v. McCall*, 64 Pa. St. 207; *Norris v. Johnson*, 5 Pa. 287; *Vaux v. Parke*, 7 Watts & Sergeant's Reports, 19; *Clute v. Bool*, 8 Paige, 83; *Boswell v. Anderson*, 1 Patton & Heath's Reports (Va.) 185; *Bush's Appeal*, 33 Pa. St. 85; *Thackara v. Mintzer*, 100 Pa. St. 151; *Nichols v. Eaton*, 91 U. S. 716. (4) The appellant purchased the land subject to all the conditions of the trust, and, if the respondent, Mrs. Black, could not alien the land nor sell or assign the income or usufruct of the land, then the purchaser cannot. 1 Perry on Trusts, sec. 346, and authorities cited; *Gritchell v. Kreider*, 12 Mo. App. 503. (5) It is not an invariable rule that the instrument creating the trust should contain an express restraint

upon the voluntary or involuntary alienation of the trust property. Executory trusts without such restraint have been upheld in *Pope's Ex'rs v. Elliott*, 8 B. M.; *Leavitt v. Beirne*, 21 Conn.; *White v. White*, 30 Vt., and very slight in *Bramhall v. Ferris*, 14 N. Y.; *Hill v. McRea*, 27 Ala. 175; and *Rife v. Geiger*, 59 Pa. St., cited under third proposition. (6) If the court should hold that the property, for aught contained in the will, was vendible upon execution, then, it is maintained that all the elements necessary to impress the estate with the homestead character were present under section 2689, Revised Statutes, 1879, in force at the time of the sale, and she was entitled to the possession of the whole until the homestead should be set off. (7) That the law at the time of making the will applicable to this case as expounded by the courts of the state (Pa.) where the will was made, though not of controlling force, will have great influence here in construing the provisions of the will. *Skouten v. Wood*, 57 Mo. 380; *Johnson v. Gawtry*, 83 Mo. 339, and cases cited.

BLACK, P. J.—The plaintiff prays for a decree declaring the defendant, Alfred Hayes, seized of one hundred and fifty acres of land in trust for the defendant, Barbara Black, for the term of her natural life, and that the trust be executed by vesting such life estate in him as the purchaser of the property at an execution sale on a judgment against Barbara. The trial court dismissed the bill.

The record, as it stands, discloses the following facts: Thomas S. Black, a resident of the state of Pennsylvania, died testate in December, 1870, and the will was duly probated in that state. The testator empowered and directed his executors to sell all of his real and personal property, and then says: "And when the whole of my estate shall be converted into

money as aforesaid, then I will and direct that, after the payment of my just debts and funeral expenses, one full third part or share of my estate shall be placed by my executors at interest on good real estate security, or in such United States bonds, bank stock or railroad stock, as may be deemed best by my said executors, or, with the consent of my wife, Barbara, my executors are authorized and directed to invest the same in whole or in part, as may by them be deemed advisable, in lands in the state of Missouri, the interest of which said moneys, or the income of which said lands, constituting as aforesaid, the one third of my estate, shall go to and be for the use of my beloved wife, Barbara Black, during all the term of her natural life, which is to be in lieu of her dower at common law; and from and immediately after the death of my said wife I give, devise and bequeath the principal of said one third part or share of my said estate, whether the same be in money or in lands, to be equally divided among all my children and their heirs share and share alike."

Various bequests are then made to his ten or eleven children, with directions that the same be paid to such as are of full age within one year. The will then provides that the executors may invest the bequests made to the children not of age, in whole or in part, in lands in this state, "which said lands, on the arrival of the children at the age of twenty-one, shall be deeded to them respectively by the said executors."

The defendant Hayes, one of the nominated executors, qualified and converted the property into money. After the payment of debts, he had in his hands, subject to the provisions of the will concerning the widow, the sum of $5,500. With the consent of the widow, he invested $3,750 of that sum in the land now in suit, situate in Franklin county in this state, and took a deed thereto in his own name. This deed bears

date the nineteenth of April, 1871, and the grantee is described therein as "Alfred Hayes, acting executor of the last will and testament of Thomas S. Black, of the county of Union in the state of Pennsylvania, party of the second part." There is in the deed no other mention of the trusts upon which the executor purchased and holds the land.

Barbara Black and her family of ten children, some of whom were minors, moved to this state in 1871 and located upon the land. She took possession by the permission of Hayes, and has ever since had and held possession, and used and enjoyed the rents and profits thereof.

On the twentieth of November, 1882, May M. Black obtained judgment against Barbara in the sum of about $1,500. The interest of Barbara was sold under execution issued on the judgment, and the plaintiff became the purchaser at the price of $100, and received a sheriff's deed dated the fifteenth of June, 1885. Plaintiff was the attorney for May M.

It is alleged in the answer, and admitted by the reply, that Hayes had advanced to Barbara the remainder of the $5,500, to enable her to move to this state and to purchase stock and farming implements.

The plaintiff and the defendants all set up and plead the will, and it is agreed that the defendant Hayes purchased the land for the purpose specified in that instrument, and that he holds it for the purpose and upon the terms mentioned in the will. The question then arises whether the statute of uses vests the legal title to a life estate in Barbara Black, freed of any trust, or whether her interest in the land is an equitable one.

The first section of our statute concerning uses and trusts is in substance and effect the same as the statute of uses of 27 Henry VIII. If an estate is con-

veyed or devised to one in trust or for the use of another, and nothing more is said, the statute executes the use, that is to say, it transfers the legal estate to such other person; but, if the donee in trust or to uses is invested with duties and powers, then a trust is created and the legal title does not pass to the *cestui que trust*. Such trusts are not and never were affected by the statute of uses. "Therefore if any agency, duty or power be imposed on the trustee, as by a limitation to a trustee and his heirs to pay the rents, or to convey the estate, or if any control is to be exercised, or duty performed by the trustee in *applying* the rents to a person's maintenance, or in making repairs, or to preserve contingent remainders, or to raise a sum of money, or to dispose of the estate by sale,—in all these, and in other and like cases, the operation of the statute is excluded, and the trust or uses remain mere equitable titles. 1 Perry on Trusts [4 Ed.] sec. 305; see to the same effect Hill on Trustees [Am. Ed.] 360.

Where the estate is limited to a trustee to *pay* the rents and profits to another person for life, the trustee takes the legal estate, for he must receive them before he can make the payments; but, where the estate is limited to a trustee to permit and suffer another to have the rents, the statute vests the legal estate in such other person, because the trustee has no duties to perform. 1 Sanders on Uses & Trusts [Am. Ed.] 253; Hill on Trustees [Am. Ed.] 361; 1 Perry on Trusts [4 Ed.] sec. 306; *Upham v. Varney*, 15 N. H. 463; *Barker v. Greenwood*, 1 Horn & Hurlstone, 389.

Slight expressions are often deemed sufficient to create a trust. Thus in the case last cited, a devise to trustees to suffer and permit the widow to take the *net* rents and profits, subject to a rent charge, was held to constitute a trust, and the trustees took the legal title during the life of the wife. "Although the direction

may be for the trustees to *permit and suffer* another person to receive the rents, yet, if any duty is imposed upon the trustees expressly or by implication, the legal estate will remain in them unaffected by the statute." 1 Perry on Trusts [4 Ed.] sec. 307.　Or as said in Hill: "However, notwithstanding a direction in a will for the trustees to permit and suffer another person to receive the rents, yet, if any additional duty be imposed upon the trustees, either expressly or by implication, which requires that they should have the legal estate, this distinction will not be sufficient to prevail; but the legal estate will vest in the trustees, to enable them to perform the trust."　Hill on Trustees [Am. Ed.] 362.

In applying these well settled principles of law, it may be observed that a mere expressed or implied intention of the donor that the legal title shall remain in the trustee is not sufficient to defeat the statute of uses; but, in cases like this, it is the presence of active duties on the part of the trustee that establishes the legal title in him, to the end that he may perform those duties.　It is therefore all important to know whether any and what duties are imposed upon the trustee; and for the existence or non-existence of such duties we must look to the intention of the donor.　Here that intention is to be gathered from a consideration of the will taken as a whole.

The testator directs the executor to convert all of his property into money, and then place the one third part at interest, or invest the same in the specified bonds or stocks; or, with the consent of his wife, to invest the same or a part thereof in lands in this state; "the interest of which said moneys, or the income of which said lands, shall go to and be for the use of" his wife during her life; after her death the money or lands to be equally divided among his children.　The active duties of the executor did not end when he converted

the property into money.    He was still bound to invest
the same.    Had he placed the money at interest, or
invested it in bonds or stocks, it would have been his
duty to hold the notes, bonds, or stocks and collect
the interest or dividends and pay the same over to the
widow.    All this, though not expressed in terms, is
clearly implied.    As to investments made in such
property the active duties of the executor as such, or as
a trustee, would continue during the life of the widow.
Now the testator disposes of the accruing interest
arising from loans, bonds, etc., and the income from
the land which may be purchased, by the use of the
same words, namely, "go to and be for the use of" his
wife during her life.    These words used as they are it
seems to us mean more than a simple direction to the
trustee to permit and suffer her to have the rents and
profits.    The fair implication is that the trustee is to
direct and control the management of the lands during
the life of the widow.    Some support is given to this
from that part of the will whereby the testator author-
izes the executor to invest the legacies going to the
minor children in lands in this state, the lands to be
deeded to them when they reach the age of twenty-one
years.    The scheme of the will seems to be to keep the
legacies of the minor children, whether in money or
invested in land, under the control of the executor
until they reach the age of twenty-one; and also to
keep the property set apart to the use of the widow,
whether in money or land, under his supervision and
control.    Though it was no breach of trust on the part
of the executor to place the life tenant in possession of
the land and permit her to occupy it, still it was his
duty to see that the taxes were paid and the rights of
the remaindermen protected, and this is sufficient to
establish a trust.    The legal title is in Hayes and
should remain in him until the death of the widow.

The bill was therefore properly dismissed. Whether the income arising from the land can be subjected to the payment of the judgment of May M. Black we do not stop to consider.

The suggestion that Barbara Black has a home-stead exemption in this land seems to be made here for the first time, and as the case was not tried on any such a' theory, we say no more upon that subject. The judgment is affirmed. BARCLAY, J., not sitting. The other judges concur.