WARREN HEATON, Respondent, v. AMANDA V. DICKSON and MISSISSIPPI VALLEY TRUST COMPANY, Appellants.

St. Louis Court of Appeals, December 30, 1910.

1. **BILLS AND NOTES: Indorser: Signature on Back of Note.** If one who is neither a payee of a note nor an indorsee thereof signs his name on its back before delivery, he becomes prima facie a co-maker, and not an indorser.

2. ————: **Effect of Payment by Co-Maker: Contribution.** The payment of a note by a co-maker extinguishes its obligation and excludes an action thereafter on the note itself, unless reissued; but such payment confers a right on the maker so paying to sue the other co-makers solely for a contribution of their proportionate part of the amount of the payment, not exceeding the amount of the note, interest and costs.

3. ————: **Payment by Accommodation Indorsers: Subrogation.** The rule that an indorser of a note who pays the same thereby acquires title thereto and may sue the maker on the note itself applies to accommodation indorsers.

4. ————: **Establishing Status as Indorser: Parol Evidence.** In an action against a maker of a promissory note by one who indorsed his name on the back and who paid it to the holder, parol evidence is competent to show he signed the note as an accommodation indorser; but, unless it be established that there was an express understanding he was merely an indorser, he will be considered a co-maker.

5. **APPELLATE PRACTICE: Conclusiveness of Finding.** Where there is substantial evidence to support a finding of the trial court, the judgment with respect to such matter should be affirmed.

6. **BILLS AND NOTES: Establishing Status as Indorser: Evidence: Inferences.** While the word "indorser" is frequently used in a popular way to designate a maker who subscribes his name on the back of a note, as well as an indorser in the technical sense of the term, yet when the parties to the contract, testifying that the indorsement was an accommodation one only, appear to be intelligent business men, knowing the technical import of the term, the trial court may infer that the term was understandingly used.

7. **APPELLATE PRACTICE: Presumption in Aid of Verdict.** On appeal, all reasonable inferences from the testimony and from the appearance and conduct of the witnesses must be considered in aid of the verdict.

Heaton v. Dickson and Trust Co.

8. **CREDITORS' BILL: Equity: Not Necessary to First Reduce Claim to Judgment, When: Trusts.** Where the defendant is a nonresident, and has no property in the state subject to legal process, but is possessed of an equitable estate, plaintiff may seek in equity to sequester the income therefrom without first obtaining a judgment at law and endeavoring to collect the same.

9. **WILLS: Construction: Intent.** In construing a will, the court must ascertain the testator's intention from the provisions of the whole document.

10. **TRUSTS: Limitations Against Alienation and Claims of Creditors: Presumptions: Wills.** While one may by his will settle an estate in trust with an equitable use to another for life, with a limitation against alienation and free from the claims of creditors, the presumption is that he has not done so, unless either express words to that effect are set forth or a clear and undoubted intention to the same end is manifested in the will.

11. **————: Spendthrift Trust: Rights of Creditors: Creditors' Bill: Wills: Construction.** A will directing that testator's wife and children, or their heirs, should receive quarterly from his executor one-fifth each of the net income of his real estate did not create a spendthrift trust, and the income of one of the daughters' share was subject to the right of her creditors in a proceeding in equity in the nature of a creditors' bill or an equitable garnishment.

12. **————: Active Trust: Rights of Creditors.** Creditors of a *cestui que trust* are not inhibited from proceeding against the income from the trust estate merely because the trust is an active one.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

AFFIRMED.

*Harry H. Haeussler* and *Chas. J. Macauley* for appellants.

(1) (a) One who writes his name upon the back of a promissory note of which he is neither payee, nor indorsee, and does so prior to its delivery, is prima facie a co-maker, and assumes liability as such in the absence of evidence that it was the understanding at the time that he should be held in some other capacity. Boyer

v. Boogher, 11 Mo. App. 131; Schmidt Malting Co. v. Miller, 38 Mo. App. 251; Rossi v. Schawacker, 66 Mo. App. 67; Oexner v. Loehr, 106 Mo. App. 412, s. c. 117 Mo. App. 698. (b) In the case at bar, plaintiff wrote his name across the back of the note sued on in the first count of his petition prior to its delivery to Rush the payee therein. And since there is no evidence to show that it was the understanding that he was to be held in some capacity other than that of co-maker, it will be presumed that he signed as a co-maker. And his payment of the note at the bank where it had been placed by Rush for collection, extinguished the original debt and cancelled the note. Therefore, plaintiff could not recover in an action on the note the amount he paid the bank; but his action, if any he has, is on the implied promise of the defendant, Dickson, to refund to him the amount he paid the bank to take up the note. Secs. 4504-5, R. S. 1899; Curry v. LaFon, 133 Mo. App. 163; Burton v. Rutherford, Admr., 49 Mo. 258; Reynolds v. Schade et al., 109 S. W. Rep. 632, 131 Mo. App. 1; Burrus v. Cook, 215 Mo. 496; Bauer v. Gray, 18 Mo. App. 170; Williams v. Gerber, 75 Mo. App. 18; Faires v. Cockrell, 88 Texas at p. 436 and cases cited; Gieseke, Admr. v. Johnson, 115 Ind. 310; Burton v. Rutherford, Admr., 49 Mo. 258; Blake v. Downey, 51 Mo. 437; Halliburton v. Carter, 55 Mo. 435. (c) The assignment of the note by Rush, the payee therein, to plaintiff, after it was paid, did not have the effect to resuscitate the note or to vitalize it in the hands of plaintiff so as to enable him to sue and recover on it. Williams v. Gerber, 75 Mo. App. 18; Stevens v. Hannan, 86 Mich. 305; Burton v. Rutherford, Admr., 49 Mo. 258. (2) (a) Before one can maintain a creditor's bill, he must first have exhausted all of his legal remedies. He must show that he has no adequate remedy at law. Davidson v. Dockery, 179 Mo. 687; Wilkinson v. Goodin, 71 Mo. App. 394. (3) It was the intention of John S. Moore, in making his will to create a spendthrift trust, and the

words used by him in his will are sufficient for that purpose and sufficient to show that such was his intention. Partridge v. Cavender, 96 Mo. 452; Smith v. Towers, 14 Atl. Rep. 497; Schoenich v. Field et al., 73 Mo. App. 452; Wagner v. Wagner, 244 Ill. 111; Baker v. Brown, 146 Mass. 369; Burnett v. Burnett, 217 Ill. 437; Lampert v. Haydel, 96 Mo. 439; Stombaugh's Estate, 135 Pa. 585; Kessner v. Phillips, 189 Mo. 524. In construing wills, the real intention of the testator shall be ascertained and effectuated. Where the idea is clear, the words employed must be read so as to give effect to the intention. Partridge v. Cavender, 96 Mo. 452; Gannon v. Bank, 200 Mo. 85 and cases cited; Brooks v. Brooks, 187 Mo. 476; Wisker v. Rische, 167 Mo. 533; Robards v. Brown, 167 Mo. 457. (4) The trust created by the will of John S. Moore is an executory or active trust. This being so, neither the principal nor the income thereof can in any way or manner be reached by the creditors of appellant Dickson, nor applied toward the payment of her debts. Schoenich v. Field, 73 Mo. App. 452; Pugh v. Hayes, 113 Mo. 424; Jarboe v. Hey, 122 Mo. 341; Lampert v. Haydel, 96 Mo. 439; 1 Perry on Trusts, Sec. 386a; Smith v. Smith, 70 Mo. App. 449; Mattison v. Mattison (Oregon), 100 Pac. Rep. 4; Partridge v. Cavender, 96 Mo. 452.

*O. L. Cravens* and *W. Christy Bryan* for respondent.

(1) The law is well established in this state, and universally elsewhere, that the accommodation indorser may recover from the makers, and that his cause of action is on the note itself. Peers v. Kirkham, 46 Mo. 146; Fenn v. Dugdale, 40 Mo. 63; Fenn v. Dugdale, 31 Mo. 580; Sharp v. Garnet, 54 Mo. App. 410; 7 Cyc. 1020; Keys v. Keys Estate, 116 S. W. 537. (2) While a general rule is that a creditor must exhaust his legal remedies before a court of equity will interpose for his

relief, and the proper evidence of that fact is a judgment, execution and return of *nulla bona,* yet, when it appears that the judgment debtor is insolvent, and that the issue of an execution would be of no practical utility, such issue may be dispensed with. Merry v. Fremon, 44 Mo. 518; Turner v. Adams, 46 Mo. 95; Luthy v. Woods, 1 Mo. App. 167; Carp v. Chipley, 73 Mo. App. 22; Burnham v. Smith, 82 Mo. App. 135; Luthy v. Woods, 6 Mo. App. 67. (3) Where a debtor is a nonresident and has no property which can be reached by the ordinary or statutory process, but has funds held by an assignee for the benefit of creditors under the supervision of the court, a creditor's bill will lie without the necessity of first reducing the demand to a judgment and issuing an execution, and in such case it is not necessary to show an actual fraud or an attempt to defraud. Webb v. Lumber Co., 68 Mo. App. 546; Pendleton v. Perkins, 49 Mo. 565; Lackland v. Smith, 5 Mo. App. 153; City of St. Louis v. Lumber Co., 42 Mo. App. 586; Humphries v. Milling Co., 98 Mo. 542; Batchelder v. Aetheimer, 10 Mo. App. 181. (4) The right of plaintiff in this case to have the interest of Mrs. Dickson subjected to the payment of plaintiff's claim in the suit now pending is amply sustained by the following cases: McIlvane v. Smith, 42 Mo. 45; Pendleton v. Perkins, 49, 565; Lackland v. Garesche, 56 Mo. 267.

NORTONI, J.—This is a proceeding in equity in the nature of a creditor's bill or an equitable garnishment. The finding and decree were for plaintiff, and defendant prosecutes the appeal.

Defendant Amanda V. Dickson is the beneficiary of a trust estate, settled to her use by the provisions of her father's will, and the important question for decision relates to a construction of that instrument. But there are other matters urged relating to plaintiff's right of recovery which should be first examined and disposed of. The bill is in two counts, each of which

declares upon a promissory note, executed by defendant in favor of one, Rush, payee, to whose title plaintiff succeeded and of which notes he is now the holder. We will consider the matters urged against plaintiff's right of recovery on the note described in the first count only, as the argument relating to that sued upon in the second does not merit discussion in the opinion. It appears by the note declared upon in the first count that defendant executed the same to J. M. Rush on September 29, 1899. By its provisions, defendant promised to pay Rush $291.40 three months after date, with interest from date at the rate of eight per cent per annum until paid. On its face, the note recites that it was given for value received and is negotiable and payable without defalcation or discount; in other words, the note is in the usual form of a negotiable promissory note. Plaintiff Warren Heaton is an accommodation indorser thereon, for it appears that he signed his name on the back of the note as such before it was delivered. Afterwards, plaintiff, as such indorser, was required to pay the note, and he now prosecutes this suit against the maker of the note on the note itself, which he acquired by operation of law by discharging his independent obligation as indorser.

It is first argued that the suit on the note may not be maintained by plaintiff for the reason it appears he signed his name on the back of the instrument before delivery. It is said in such circumstances plaintiff is a co-maker of the note instead of an indorser and that therefore, upon paying the note, he extinguished the indebtedness vouchsafed therein and acquired the sole right to sue defendant for contribution on the implied undertaking which always obtains between the parties in such circumstances. The notes in suit antedate our Negotiable Instrument Law of 1905 and with that legislation we are not concerned. Under the rules of decision in this state pertaining to the law merchant, there can be no doubt of the general proposition that if one,

who is neither a payee in the note nor an indorsee thereof, signs his name on its back before delivery, he thus becomes prima facie a co-maker of the note and not an indorser. [Boyer v. Boogher, 11 Mo. App. 130; Rossi v. Schawacker, 66 Mo. App. 67; Oexner v. Loehr, 106 Mo. App. 412, 80 S. W. 690; Schmidt Malting Co. v. Miller, 38 Mo. App. 251; Otto v. Bent, 48 Mo. 23, 26.] It is true, too, that the payment of a note by a co-maker operates to extinguish its obligation and exclude an action thereafter on the note itself unless reissued. In other words, payment of the note by a co-maker confers a right upon him to sue other co-makers solely for a contribution of their proportionate part of the amount of his outlay in that behalf, not exceeding the amount of the note, interest and costs. [Curry v. Lafon, 133 Mo. App. 163, 113 S. W. 246; Williams v. Gerber, 75 Mo. App. 18.] But though such be the rule as to a co-maker, it is not so with an indorser. Contribution alone lies between co-makers because of the contractual privity which obtains between them, and there is no such privity between the maker of a note and a mere indorser, though there be an equitable right in the indorser to be subrogated with respect to collateral deposited by the maker of the note for its security. The undertaking of the indorser is wholly independent of that of the maker of the note, for by it he renders himself independently liable to the holder of the instrument and his right to subrogation inures on payment of the note through the privity between him and the holder of the note and collateral. It is therefore the rule that an indorser who pays the note acquires title thereto by such payment and may, of course, sue the maker on the note itself. The principle obtains alike to accommodation indorsers, for their rights and liabilities are the same as others. [Fenn v. Dugdale, 40 Mo. 63; 7 Cyc. 1020, 1021.] The precise question for decision with respect to this matter therefore is, as to whether plaintiff appears to be a co-maker or an indorser of the note in suit. Parol evidence is

competent in the circumstances of the case to show the
relation plaintiff assumed, and the rule above stated as
to one who is neither payee nor indorsee, signing his
name on the back of the note before delivery, pertains
only to the prima facie liability of such party.  But it
is said unless an express understanding appears that
the party signed his name as indorser, he will be treated,
and his rights determined, as though he is a co-maker,
for such is the obligation which the law imports.  [Oex-
ner v. Loehr, 106 Mo. App. 412, 80 S. W. 690; Otto v.
Bent, 48 Mo. 23, 26; Rossi v. Schawacker, 66 Mo. App.
67; Boyer v. Boogher, 11 Mo. App. 130; Schmidt Malting
Co. v. Miller, 38 Mo. App. 251.]  The express under-
standing referred to, lying as it does, in parol testimony,
is peculiarly a matter within the province of the trial
court and it must be viewed in this instance from the
standpoint of after judgment affirming such express
understanding, for the court found the issue for plaintiff
as though such express understanding was had.     If
there is substantial evidence to support it, the judgment
with respect to that matter should be affirmed.    Both
plaintiff and Rush, the payee of the note, pointedly
testified that plaintiff affixed his signature on the back
of the note as accommodation indorser only and no one
gave testimony to the contrary.   Indeed, plaintiff and
Rush, the payee, to whom the note was originally made,
were the only witnesses who spoke upon this subject at
all.    Plaintiff and Rush were the sole parties to the con-
tract, if it were one of indorsement, for, in this case,
such is an independent undertaking between the indor-
ser and the payee, Rush, to whom the promise was made.
Plaintiff and Rush were certainly competent to speak
on the subject and it appears they agree as to the terms
and character of plaintiff's undertaking.   It is true
that the employment of the word "indorser", in a con-
versation between the parties at the time the contract
was made is not conclusive as a matter of law, for the
word "indorser", in a popular way, is frequently used

to designate a maker who subscribes his name on the back of the note as well as an indorser in the technical sense of the term. [Oexner v. Loehr, 106 Mo. App. 412, 80 S. W. 690.] But when the party or parties to the contract, giving testimony with respect to such an undertaking, appear to be intelligent business men who know the technical import of the term, "indorser", we believe such appearances is a circumstance for which the trial court may infer the term was understandingly used. In this view, the judgment finding the express understanding may be sustained, for besides the words of the witness, all reasonable inferences from them and the appearance and conduct of the witness on the stand are to be considered in aid of the verdict. It is clearly a question for the trier of the fact and there is abundant evidence in the record to support the finding that plaintiff signed the note with the understanding that he was to assume the liabilities and enjoy the privileges of an accommodation indorser only. [See Rossi v. Schawacker, 66 Mo. App. 67.] Plaintiff having sustained the relation of indorser, instead of co-maker, the payment of the note by him operated to vest its title in him as a consequence, of course, authorized his suit on the note.

It is next argued that even if plaintiff may maintain a suit on the note in a court of law, he is not permitted to do so in a court of equity. It is said that though the proceeding seeks to sequestrate defendant's income from a trust estate, which is peculiarly a matter of equitable cognizance, and the court may decree the payment of a debt from that source in some cases, this suit must fail for the reason it does not appear plaintiff has exhausted his remedy at law. The suggestion is that before seeking relief in this proceeding plaintiff should have obtained a judgment at law on the note and endeavored to collect the same by the usual process. It is unnecessary to consider this argument further than to say that an exception to the rule invoked exists in

cases where it appears the defendant is a non-resident of the state and has no property here subject to legal process but is possessed of an equitable estate in Missouri. The proof is conclusive that defendant debtor, Mrs. Dickson, is now and has been for several years, a non-resident of this state; that after diligent search in that behalf, no property of hers whatever may be found subject to execution or attachment at law. Except for her equitable estate in the income from the trust property, she is insolvent under our law. It seems to be a precept of public policy that a state will aid its citizens in the collection of debts from non-resident insolvents who may chance to have some property rights within its borders. Acting on this principle, courts of equity frequently entertain a proceeding on the original indebtedness when no judgment at law has been obtained thereon and sequester funds or property in the state to the payment of the debts of such non-resident persons owing to its citizens. Our own Supreme Court, in an able and well considered opinion, has given effect to the rule in its broadest scope. [See Pendleton v. Perkins, 49 Mo. 565; see, also, Lackland v. Smith, 5 Mo. App. 153; Humphreys v. Milling Co., 98 Mo. 542, 10 S. W. 140; Webb v. Lumber Co., 68 Mo. App. 546.] The mere fact that plaintiff omitted to first reduce his notes to judgment is unimportant in the circumstances of the case, for if the trust properly may be sequestered, the court will award complete relief, notwithstanding there is no judgment at law, on its appearing, as it does, that defendant debtor is a non-resident of the state, who possesses no property here, subject to legal process; for why the additional trouble and expense of a suit and execution at law when it is clear no property exists subject to seizure thereunder?

By his last will, John S. Moore, father of defendant Amanda V. Dickson, settled a trust to her use by vesting the legal title to certain real property in his execu-

tor, John Maguire, with the direction, substantially, that said Maguire manage the propery, collect the rents, pay taxes, repairs, etc., after which Mrs. Dickson should receive quarterly from the executor one-fifth of the net income from the rental of such real estate for the period of her natural life. Maguire, having departed this life, the Mississippi Valley Trust Company was duly appointed in his stead to administer the trust and it appears such trustee now has in its possession a considerable amount of money as Mrs. Dickson's one-fifth share of the net income from the trust estate. This proceeding seeks to impound and sequester a sufficient amount of such income to discharge the indebtedness owing by Mrs. Dickson to plaintiff and the costs incident thereto. The court impounded a sufficient amount of the funds referred to and appointed the Mississippi Valley Trust Company receiver to take and hold the same *pendente lite*. Afterwards, by its decree, the court directed payment of plaintiff's claim and costs from Mrs. Dickson's income from the trust estate.

It is argued by defendant that such income is immune from the claims of creditors for the reason the donor created a spendthrift trust by his will. It is said though the will contains no express words inhibiting the *cestui que use* from anticipating or alienating her one-fifth part of the net income from the estate or withdrawing it from the grasp of her creditors, it nevertheless manifests an intention to that effect sufficient for the purpose suggested. A consideration of the argument advanced, of course, involves an interpretation of the provisions of the will touching upon the trust. While it is the duty of the court to ascertain the intention of the testator from the provisions of the whole document, it is conceded by all concerned that the fourth section of the will alone is important; and that no words contained in other parts thereof suggest anything relevant to the matter in judgment. The portion of the will referred to is as follows:

"Item 4th. I desire that my real estate in the city of St. Louis, Missouri, and in Cairo, Illinois, shall continue to carry the incumbrance which may be upon the same at my death, during the lifetime of my children, and that my wife and my children, or their heirs shall receive quarterly from my executor one-fifth each of the net income from the rental of my real estate (the children of my daughter, Mrs. M. M. Thornton, deceased, receiving her fifth). After the death of the last of my children, I desire that my real estate shall be sold to the best advantage and the proceeds equally divided among my wife or her heirs, and my grandchildren or their heirs living at that time."

That the will contains no express words of limitation against the right of the *cestui que trust* to anticipate or alienate her portion of the income from the trust property or withdraw it from the claims of creditors is obvious. Indeed, so much is conceded. But it is said that as the settler directed that his wife and children, or their heirs, should *receive* quarterly from his executors one-fifth each of the net income from the rental of the real estate settled in trust, and it appears such arrangement was to continue until the death of the several beneficiaries, it is obvious his intention was to restrict the right of alienation and place the net income of the estate beyond the reach of creditors. There can be no doubt that in construing a will the intention of the testator is the polar star by which the court must be guided, and if it appears from reading the whole instrument that John S. Moore intended to create a trust for the purpose suggested, such intention should be effectuated by declaring the result accordingly. [Partridge v. Cavender, 96 Mo. 452, 9 S. W. 785; 26 Am. and Eng. Ency. Law (2 Ed.), 141, 142.] But such intention in the instant case must be clear and undoubted, for the reason the principle advanced operates to fetter the transmission of property and render a valuable estate unavailable as a means of compensating just

debts. The policy of the law, in a measure, forbids such result, though it rocognizes the right of a donor of a .bounty to restrict it by reasonable limitations, Indeed, by the law of the mother country, from whence our system of jurisprudence is entailed as a heritage, one may not, as a rule, create a life estate in another except he confers with it all of the incidents which usually attend the same. It is the rule in England that a donor cannot create a life estate dissevered from the usual incidents of such estate which includes the power of voluntary alienation and the consequent liability of the estate for debts, unless the instrument itself provides for the cesser or defeasance of the estate upon an attempted alienation or *in invitum* as by an act of bankruptcy, or unless, if it be a trust estate, a mere use be created at the discretion of the trustees and the beneficiary is wholly without power to control such discretion. [Brandon v. Robinson, 18 Ves. 433; 26 Am. and Eng. Ency. Law (2 Ed.), 138, 139; 2 Perry on Trusts (5 Ed.), sec. 827a.] There is an exception to the English rule, however, with which we are not concerned, in favor of trusts created for married women. [1 Perry on Trusts (5 Ed.), sec. 387.] Though the English rule in its broad significance, which is in aid of free alienation and the claims of creditors, has not been accepted generally in this country, its policy nevertheless prevails at least to the extent that grants of property and settlements in trust are to be taken prima facie as unhampered with limitations and unencumbered with conditions unless such an intention clearly appears. The courts of a number of American states, among them those of Rhode Island, South Carolina and North Carolina, adhere to the English rule but others have questioned and rejected it in so far as to say that while estates thus granted are to be regarded prima facie as unencumbered with any limitations whatever, it is competent for the donor to effect such reasonable limitations upon the equitable use as he may choose, provided the rule against perpetuities is not

impinged or the interest created otherwise illegal. Foremost among the American authorities on the question, is the case of Nichols, Assignee, v. Eaton, 91 U. S. 716, where, in an opinion by Mr. Justice MILLER, the subject is expounded and much elucidated on principle. The Missouri courts and others adhere to what is known as the American Rule so forcibly expounded in Nichols v. Eaton, supra. [See Lampert v. Haydel, 96 Mo. 439, 9 S. W. 780; Pickens v. Dorris, 20 Mo. App. 1; Lampert v. Haydel, 20 Mo. App. 616; Jarboe v. Hey, 122 Mo. 341, 26 S. W. 968.] Other authorities to the same effect are Hyde v. Woods, 94 U. S. 523; Broadway Nat'l Bank v. Adams, 133 Mass. 170; Sears v. Choate, 146 Mass. 395; Maynard v. Cleaves, 149 Mass. 307; Tilton v. Davidson, 98 Me. 55; Warner v. Rice, 66 Md. 436; Wenzel v. Powder (Md.), 59 Atl. 194; 1 Perry on Trusts (5 Ed.), sec. 386a; 26 Am. and Eng. Ency. Law (2 Ed.), 139, 140, 141, 142; Kunkel v. Kemper, 32 Pa. Supr. Ct. 360; Fisher v. Taylor, 2 Rawl (Pa.) 33; Shankland's Appeal, 47 Pa. St. 114; Jourolmon v. Massengill, 86 Tenn. 81, 5 S. W. 719. It therefore appears that though one may settle an estate in trust with an equitable use to another for life, with a limitation against alienation and free from the claims of creditors, the presumption of the law is that he has not done so, unless either express words to that effect are set forth or a clear and undoubted intention to the same end is manifested in the will. If there are no express words in the will affixing a restraint against alienation and withholding the income from creditors, other language relied upon as reflecting such intention must import it to be clear and undoubted. [Maynard v. Cleaves, 149 Mass. 307, 308, 309; Sears v. Choate, 146 Mass. 395, 398; Tilton v. Davidson, 98 Me. 55, 58; Lampert v. Haydel, 20 Mo. App. 616; Pickens v. Dorris, 20 Mo. App. 1; 26 Am. and Eng. Ency. Law (2 Ed.), 141, 142.]

It is sometimes said in favor of the English rule, above referred to, that it is just, for the reason creditors

are not mislead by the fact that one having an abundance of means from the income of an estate may finally be ascertained to have no property against which their claims can be enforced. Under that rule, the income may be both alienated and appropriated for debt. Indeed, the principle which inheres in the English doctrine is in the interest of creditors for wherever there resides the power to alienate property that which may be alienated is liable for the debts of the person having the right of alienation unless otherwise exempted. [Warner v. Rice, 66 Md. 436.] However, the same consideration for creditors does not prevail with us, for throughout the states of the American Union a public policy has been declared in favor of the debtor and his right of support to a certain extent, notwithstanding the claims of creditors against him. Such public policy is manifested in the exemption statutes of the various states. Besides our registration laws require all such documents as wills and deeds to be spread of record, with a view to public notice of the rights acquired by the donee and the purpose intended by the donor. A creditor may ascertain the facts by an examination of such records and if he sees fit to advance credit without so doing is very justly deemed to have acted at his peril. These considerations constitute an element to be reckoned with by the court in determining the true principle to be applied in matters of the character here in judgment. [See Nichols v. Eaton, 91 U. S. 716; Pickens v. Dorris, 20 Mo. App. 1.] From this it is obvious that a will or other instrument, settling a trust in favor of another, without express words of limitation in respect of the power of alienation or of the rights of creditors, should manifest an intention to that effect sufficiently clear and undoubted to afford reasonable notice, through the medium of the registration laws, to the world at large. Such we believe to be the sound doctrine on the subject, otherwise persons may be mislead into dealing with the *cestui que trust* on the credit of an equit-

able estate which is restrained as to alienation and the rights of creditors. In keeping with this doctrine, the Supreme Court of Maryland, in Wenzel v. Powder, 59 Atl. 194, declared that though an instrument created a trust estate in favor of another for life, the words that it was "for support and maintenance" alone were insufficient to point a clear and undoubted intention on the part of the settler of the trust to restrain the equitable interest in the income for alienation or remove it beyond reach of creditors. The court said the words "for support and maintenance" in and of themselves do not characterize a spendthrift trust. So the Supreme Court of Massachusetts, in Maynard v. Cleaves, 149 Mass. 307, determined that as the income of an estate was conveyed to the widow for life "to her use and benefit"—"for her comfort and support"—such words were insufficient to withdraw the income from creditors. The court said such words were of themselves without force as a limitation upon the absolute gift of the income from the estate. In Girard Life Ins., etc., Co. v. Chambers, 46 Pa. St. 485, the Supreme Court of Pennsylvania declared that though the will directed the trustee to "collect and receive the rents, issues, interest and income from the estate" and after deducting expenses "to pay over the same unto the *cestui que trust* for his own use and benefit or to such person as by his order in writing he may authorize to receive the same" a spendthrift trust was not created thereby. The income of the estate was determined to be subject to the claims of creditors for the reason the testator had not sufficiently manifested an intention against the right of the *cestui que trust* to anticipate or alienate the same or withhold it from creditors. [See, also, Pickens v. Dorris, 20 Mo. App. 1; Kingman v. Winchall, 20 S. W. 296.] The case last cited is a judgment of our Supreme Court in point but we have been unable to find it in the official reports. However, upon inquiry, the Clerk of the Supreme Court informs us the opinion is on file there and that it has never been

withdrawn. In view of this fact, it is the rule of decision in this state, though not officially reported. Both on principle and authority, it is entirely clear that the testator omitted to express a clear and undoubted intention to the effect that his purpose was to restrain Mrs. Dickson from either anticipating or alienating her share of the net income from the trust estate or that it should not be available to creditors for her debts. The mere direction "that my wife and my children or their heirs shall receive quarterly from my executors one-fifth each from the net income of my real estate" is not sufficient to signify an intention to create a spendthrift trust nor to impart reasonable notice of such a purpose.

But it is said, though there appears no spendthrift trust was created, the trust is an active one beyond question and for this reason the income is not subject to the claims of a creditor. It seems such was stated to be the law by this court in Schoeneich v. Field, 73 Mo. App. 452. Such is an erroneous view, indeed. There can be no doubt that the will discloses an active trust in contradistinction to a dry one, for it imposes active duties of a substantial character upon the trustee, but we are familiar with no principle of our jurisprudence which inhibits the rights of creditors to proceed in equity against the *income* from the trust estate because of the mere fact that the trust is an active one. The case declaring the doctrine seems to rest the decision to that effect upon Pugh v. Hayes, 113 Mo. 424, 21 S. W. 23, from which a considerable excerpt of the opinion is copied. But, upon scrutinizing the opinion of the Supreme Court in that case, it is obvious that no such principle was declared. In Pugh v. Hayes, an estate in land had been settled in favor of the testator's widow with the title in the executor trustee. Under the terms of the will, the widow was to enjoy the use and benefit of the land during her natural life in lieu of dower. A judgment at law had been obtained against the widow, *cestui que trust,* and the proceeding in judgment was in equity

seeking to appropriate the land, *the corpus of the estate,* to the payment of the judgment at law against the widow. Of course, if it were a trust at all permissible under the law, the legal title to the land resided in the trustee and could not be divested on a judgment against the widow, *cestui que trust.* The only theory on which the land, or corpus of the trust estate, might be appropriated on the debt of the *cestui que trust* was that the trust was a dry one imposing no active duties upon the trustee and therefore executed by our statute of uses. Under that statute, if lands be conveyed to a trustee, for the use of another, with no purpose other than for the trustee to hold the title and without any active duties enjoined, the trust immediately becomes executed by vesting the entire estate in the beneficiary. [Sec. 2867, R. S. 1909; Carter v. Long, 181 Mo. 701, 81 S. W. 162.] That such was the only question in judgment before the Supreme Court is clearly stated in the opinion and the court reasoned to the effect that as the trustee was charged with the duty of paying taxes and some other matters, the trust was an active one and therefore not executed by the statute of uses by merging the entire estate in the widow, *cestui que trust,* against whom the judgment at law was had. Because there appeared an active trust in that case, the right of the plaintiff to appropriate the corpus of the estate was denied. But that opinion in its concluding lines reserved judgment as to the matter of appropriating the income of the estate to the payment of the plaintiff's debt, for, as said, that question was not made in the case. That case was, of course, properly decided, but it is not authority for the question in judgment in Schoeneich v. Field, 73 Mo. App. 452, which pertained alone to the *income* from the land settled in trust to the use of Field, the *cestui que trust.* In such circumstances, the matter should have been decided by determining the proposition as to whether or not a spendthrift trust appeared and not as to whether it was an active one, for the statute of

uses was not involved. In the case last mentioned, the court also cited Lampert v. Haydel, 96 Mo. 439, 9 S. W. 780; Jarboe v. Hey, 122 Mo. 341, 26 S. W. 968. But those cases do no more than to declare the doctrine heretofore discussed that it is competent for a donor to settle his property for the use of another for life with a limitation against alienation by the *cestui que trust* and restrict the rights of creditors. Schoeneich v. Field, supra, is not in accord with the established principle which points the determination of such matters, nor is it supported by authority. That case stands alone in the books asserting the doctrine suggested. It should be overruled and the judgment of the circuit court should be affimed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.