4-5643 133 S. W. 2d 19

Opinion delivered November 13, 1939.

*Walter N. Killough,* for appellant.

*J. L. Shaver* and *Giles Dearing,* for appellee.

SMITH, J. There are no controverted questions of fact involved in this appeal. They are as follows: The Cross County Bank brought this suit to foreclose a deed of trust executed to it by John D. King and Annie B., his wife, on March 5, 1932, to secure the payment of a note executed by King and wife to the order of the bank. Payments of principal and interest had reduced the balance due on the note to the sum of $4,800. The property mortgaged consisted of certain lots in the city of Wynne owned by King's mother at the time of her death. King was the only child of his mother, Callie

E. Harris, who died testate in 1916. Her will was duly probated.

Pleadings filed raised the question of the power of King to execute this deed of trust, and of its validity, and the answer to this question turns upon the proper construction of the will, the relevant portions of which appear in paragraphs fifth, sixth and eighth thereof. They read as follows:

"Fifth. All the rest and residue of my property, whether real, personal or mixed, other than heretofore or hereafter excepted, I devise and bequeath to my trustees hereinafter named and constituted, in trust for my son, John Devine King.

"I direct that my said trustees shall, after deducting the expenses of handling my estate, pay to my son, John Devine King, the sum of one hundred dollars each month, unless he shall become sick or disabled; in such event the amount shall be increased in proportion to meet the demands of such illness or disability, according to the judgment of my said executors and trustees. The said monthly income which is to be paid to my son John Devine King, shall be free of any of his debts or obligations, made by him either before my death or thereafter.

"Should my son, John Devine King, marry and die leaving issue, while the trust herein created is in force, as to the whole or any part of my estate, then I direct that this trust continue the income to be paid proportionally for the maintenance and education of said issue; each child to receive its pro rata of the principal upon becoming twenty-one years of age; but should my son, John Devine King, die without issue then I direct that my estate remaining at that time shall be distributed as follows. Divided into nine equal parts, one ninth to my brother, Isaac Block, to be held in trust by him for my niece, Eugenie Block; one ninth to my sister, Julia F. Block; two ninths to my brother, William M. Block, for his grandson, Allie Block, and my nephew, Sam Block; two ninths to my brother, J. D. Block, to be held in trust for my nephew, Maurice F. Block, and my niece, Mildred

Wilkinson; three ninths to my brother, R. L. Block, to be held in trust for my nephews, Kennedy Block and Oscar Block, and my niece, Florence Block.

"Sixth. I hereby direct that my executors shall not dispose of any of the farm lands embodied in my estate for a period of fifteen years after my death. My home is to be disposed of in accordance with the terms made and agreed to in the presence of my brothers, Isaac Block and R. L. Block. . . .

"Eighth. I hereby constitute, name and appoint my brothers, Isaac Block, J. D. Block and R. L. Block, and my son, J. D. King, executors of this, my last will and testament, and trustees for the purposes herein designated to be exempt from giving bond in both capacities. Should all except one of my executors and trustees die either before or after assuming the duties of this trust then I name and constitute the Bank of Commerce & Trust Company of Memphis, Tennessee, as executor and successor to this trust; but should two of my executors and trustees herein named be alive, then they shall at all times have all the powers herein delegated to the four until my estate has been wound up, as herein provided.

"In discharging the trust herein created and their duties as executors or trustees the concurrence of two of my said trustees shall have full power as herein recited to sell, convey and dispose of my estate and personal property and pass a good title thereto according to the terms as previously herein mentioned in my will as fully and completely as if I were alive and acting."

The will was prepared by J. D. Block, one of the trustees named therein, who was a brother of the testatrix, and known to the members of this court as one of the state's ablest and most successful lawyers. The will exemplifies the difficulty of preparing an extended statement which is susceptible of only one meaning. We are now required to construe this will, and, in construing it, must keep in mind that the cardinal principle is to ascertain the intention of the maker of the will.

In the case of *Eagle* v. *Oldham,* 116 Ark. 565, 174 S. W. 1176, it was said that "We must look to the will

to determine the testator's intention, but in getting this view we should place ourselves where he stood, and should consider the facts which were before him in deciding what he intended by the language which he employed.'' To the same effect is *Ellsworth* v. *Arkansas National Bank, Trustee,* 194 Ark. 1032, 109 S. W. 2d 1258.

All persons referred to in the will were properly made parties, and the bank, in its complaint, prayed the court to declare King to be the present owner of the fee-simple title to the mortgaged property. The Bank of Commerce & Trust Company, of Memphis, Tennessee, which had been made a party defendant, to the foreclosure suit, alleged that it had no information with reference to the matters set forth in plaintiff's complaint, and that at no time had the Memphis bank attempted to act as trustee, and it disclaimed any interest in the will, and declared its purpose not to act as trustee, and expressly refused to serve as such.

The answer filed by King and wife admitted the execution of the note sued on and the mortgage securing it, and admitted owing the balance alleged to be due on the note. They prayed the court to declare them to be the owners of the mortgaged property in fee, to the end that they might refinance their loan. King's answer alleged that all the trustees named in the will, except himself, were dead. He alleged that, in addition to the town lots which he had mortgaged to the bank, his mother, at the time of her death, was the owner of other city property and farming lands also, title to all of which he had acquired under his mother's will.

When the Bank of Commerce refused to serve as trustee, the plaintiff, Cross County Bank, filed a motion requesting the court to appoint a trustee in its stead, and upon this motion the court appointed O. H. Pool as substituted trustee, who filed an answer averring that the will had created a spendthrift trust, which had not been and could not be terminated during the lifetime of the testatrix's son, and denied that he had any interest in the property which could be sold under the deed of trust which he had executed.

The testimony was to the following effect. Isaac Block, R. L. Block and J. D. Block, three of the trustees named in the will, were brothers of the testatrix, the fourth trustee, John D. King, was her son. The sum of $100 per month was paid King regularly each month from April, 1916, to May, 1929, since which time no payments have been made him. King is now 54 years of age, and was married to his co-defendant, Annie B., in 1919. No child has been born to them.

All the trustees, except King, are now dead, but on May 6, 1929, the four trustees executed to King their executor's deed, which recites that it was executed pursuant to the powers conferred upon them by the will, which deed conveyed to King the property devised in the will. On December 29, 1928, the beneficiaries named in paragraph "Fifth" of the will executed to King quitclaim deeds conveying to him any and all interest in the estate devised to them by the will. All persons in being have conveyed to King their interests in this estate, and no others now have any interest under the will except children born to King, if any there should be. This possibility remains.

The court below was of opinion "That under the povisions of the last will and testament of Callie E. Harris, deceased, the executors and trustees named therein had a legal right to convey in fee-simple to John D. King and Annie B. King, his wife. . . .", the property mortgaged to the plaintiff bank, and decreed the foreclosure of the deed of trust. From that decree the substituted trustee has appealed.

The case of *Bowlin* v. *Citizens Bank & Trust Co.*, 131 Ark. 97, 198 S. W. 288, 2 A. L. R. 575, is relied upon by appellant substituted trustee, to sustain his contention that a spendthrift trust was created by the will, and that, where such a trust has been created, equity will not recognize a merger, even where there is a union of legal and equitable estates in the same person, if the effect of such a merger is to destroy a valid trust and to defeat the will of the party creating the trust.

This Bowlin case, *supra,* which is extensively annotated in 2 A. L. R., p. 575, recognized and decided for the first time the right of one to create a spendthrift trust by will in this state, and supports the appellant's contention that the *cestui* in a trust may not terminate or defeat it by the acquisition of the legal title to the property upon which the trust rests. See, also, *Sheridan* v. *Krause,* 161 Va. 873, 172 S. E. 508, annotated in 91 A. L. R. 1087, where many cases on this subject are collected.

If, therefore, a spendthrift trust was created, equity will not permit it to fail through the lack of a trustee to execute and perform its provisions, but will appoint a trustee for that purpose. We have, therefore, for decision the question whether a spendthrift trust was created.

The question stated is, by no means, free from doubt. The trust created has the characteristics of a spendthrift trust, but it appears to us to fail in one essential respect, and that is in the matter of discretion which was vested in the trustees. We get the impression, and are of the opinion, that, while the testatrix sought to protect her son from his improvidence and from misfortune, and, to that end, created what would otherwise be a spendthrift trust, yet, it was to be such only so long as the trustees, her brothers, should, in their discretion, continue it as such. With a mother's solicitude, the the testatrix sought to protect her son, but she had not wholly lost faith in his business capaccity, for she constituted him one of the four trustees, and empowered two of them to act, and in these trustees she placed a discretion as to the disposition of the trust estate, to which we will later refer.

Section 923 (p. 557) of Jones on Arkansas Titles reads as follows:

"A spendthrift trust is one created to provide support for designated beneficiary and to guard against his improvidence. It impounds the *corpus* of testator's estate in such a way that the *cestui* cannot receive it, or even the income therefrom except at certain intervals. All power of alienation of the trust fund is withheld from

the *cestui.* [*Bowlin* v. *Citizens' Bank & Trust Co.,* 131 Ark. 97, 198 S. W. 288], 2 A. L. R. 575. It is also protected against his creditors. 39 Cyc 40, see [*Leigh* v. *Harrison,* 69 Miss. 923, 11 So. 604], 18 L. R. A. 49, as is the income, Re *Hull's Estate,* 248 Pa. 218, 93 Atl. 944, 2 A. L. R. 855, compare [*Forbes* v. *Snow,* 239 Mass. 138, 131 N. E. 299], 16 A. L. R. 546 (where vested). No merger of life estate and remainder will defeat the trust. *Cestui* acquires no vested estate, but title and absolute control pass to trustee. Such trusts are valid in Arkansas, though not in England and certain states. [*Bowlin* v. *Citizens' Bank & Trust Co.*] 131 Ark. 97, 198 S. W. 288, [2 A. L. R. 575]. May be created in favor of testatrix husband, *Phillips* v. *Phillips,* 143 Ark. 240, 220 S. W. 52.

"But a will devising residue to children, subject to control of one of them until a named grandchild obtained his majority, or if such grandchild died before such age, the trust to continue for 10 years after such death, held not to create a spendthrift trust, *Black* v. *Baily,* 142 Ark. 201, 218 S. W. 210."

At § 742, p. 861, (2d Ed.), Kales Estates Future Interests, it is said: "A mere trusteeship, even though it is for the protection of the beneficiaries, ought not, as a matter of taste, if for no other reason, to be called a 'spendthrift trust.' Only where there is added to the trusteeship express restraints on alienation is it justifiable to call the creation a spendthrift trust."

Here, there are no restraints upon alienation, but that power is expressly conferred. Any two of the trustees are given that power, and King was one of those. The will directs that the farming lands be not sold for fifteen years, which limitation appears to imply that the city property might be sold at an earlier date. The will does not provide that the proceeds of such sale shall be impounded and be held by the trustees as a part of the corpus of the estate. The will does provide that the trustees shall pay King the sum of $100 per month, and a larger amount in certain contingencies; but we think it was the testatrix's intention that such payment should be made only so long as the trustees, in their discretion,

permitted the trust to continue. The will does not provide that the payment of $100 per month shall be continued during the life of King, or for any other definite time; but does provide that, "Should my son, John Devine King, die leaving issue, *while the trust herein created is in force,* as to the whole or any part of my estate, then I direct that this trust continue, the income to be paid proportionally for the maintenance and education of said issue." But it was to so continue in the event only that the trustees had not previously terminated the trust.

The trustees evidently construed this will as giving them the right to terminate the trust at their discretion. They, or any two of them, were given the power "to sell, convey and dispose of the estate and pass good title thereto according to the terms as previously herein mentioned," and it was not provided that the proceeds of such sale should be impounded and become a part of the trust estate. The will also provides that ". . . Should two of my executors and trustees herein named be alive, they shall, at all times, have the powers herein delegated to the four until my estate has been wound up, as herein provided."

Here, not two, but all four, of the trustees, King, himself, being one of them, joined in the execution of a deed to King, under date of May 6, 1929. This deed recites that it was executed pursuant to the powers conferred by the will "to make sale of and convey all of said real and personal property," and for ten years has not been questioned by any one, and is questioned now only because it is necessary for King to refinance his loan to the bank. We are not controlled, in our construction of the will, by that placed upon it by the executors and trustees; but, in view of their intimate relationship to the testatrix, it is a circumstance which cannot be ignored.

We conclude, therefore, that the court below was correct in holding that a spendthrift trust was not created by the will, and the decree is, therefore, affirmed.