CLEMENSON *v.* REBSAMEN.

4-6959                                            168 S. W. 2d 195

Opinion delivered January 25, 1943.

*Henry McAllister* and *Shields M. Goodwin,* for appellant.

*John Sherrill* and *Frank Wills,* for appellee.

CARTER, J. By will, C. J. Mansfield created a trust for the benefit of his only child, the appellant, Mrs. Clemenson. Upon her death such of the property as has not been used by the trustees for her benefit is to go to named legatees. Mrs. Clemenson and all of the remaindermen, except oné whose interest they proposed to have protected, agreed upon a termination of the trust and upon an immediate division of the property between them, free of the trust. The trustees refused to surrender the trust property. The Chancellor below refused to order the trustees to turn over the property. Mrs. Clemenson has appealed.

In giving the property to the appellees as trustees, Mansfield vested in them broad powers to manage and invest the property, giving them as wide latitude in making investments as if they were the absolute owners.

Paragraph Four (F) of the will provides: "The rest, residue and remainder of said net income of said trust estate shall be paid over, by my said trustees, in

quarterly installments or more often if they deem it advisable, to my daughter, Hallie M. Hays Clemenson, so long as she shall live. If in the opinion of my said trustees, it is deemed necessary or advisable said trustees, in addition to the income on said property herein awarded to my daughter, may pay her a part or all of the *corpus* of the estate herein bequeathed to her, if it be necessary for her proper maintenance and support.''

Paragraph Four (B) of the will provides: ''The said beneficiaries . . . shall not have the right or power by mortgage, pledge, assignment, sale or otherwise to anticipate, sell, pledge, charge, mortgage or otherwise encumber or dispose of in advance any part or the whole of his or her share of said trust estate, or any installment or installments of income, or to give orders in advance upon said trustees for any installment or installments of income; and no money or property payable or distributable by said trustees under the provisions of the trust, shall be in any manner liable while in possession of said trustees for the debts, contracts or engagements of any of the beneficiaries thereof.''

Paragraph twenty bequeaths the residue of the estate to the trustees for the benefit of named beneficiaries in fixed proportions. Paragraph twenty-three provides that the trustees shall make distribution to the beneficiaries named as soon as possible after the property comes into their possession ''except that they shall hold the property herein bequeathed to my daughter and distribute the income therefrom, or the *corpus* thereof, as herein provided. They shall also remain trustees under this will until after the death of my wife and my daughter and thereafter distribute the property coming into their hands from the bequests to these two beneficiaries as soon thereafter as possible to the beneficiaries named herein.''*

As stated, all of the persons, except one, who would share in the property remaining in the trust at the time of Mrs. Clemenson's death have joined her in asking for an immediate termination of the trust and an im- whether the failure of this one beneficiary to join is fatal.

The Chancellor correctly held that the beneficiaries mediate division of the property. We do not consider had no right to compel the trustees, over the objection of the trustees, to terminate the trust and to turn the property over to the beneficiaries.

Mansfield could do what he pleased with his property. He could attach such conditions as he saw fit to any of his gifts, provided he steered clear of positive prohibitions of the law, such as the Rule Against Perpetuities.

Mansfield's obvious purpose was to assure the support of his daughter by having the property managed by trustees in whose judgment he had confidence so that an income would be certain and would be free from the claims of her creditors, and so that the principal would not be encroached upon unless such encroachment is necessary or advisable—necessary or advisable not in the judgment of the daughter, but necessary or advisable in the judgment of the trustees. He gave the remaindermen nothing except what *might* be left of the *corpus* when his daughter died.

That is what Mansfield gave. Neither his daughter nor the remaindermen have any legal right to anything except what he gave.

The applicable rule is discussed in § 337 of the A. L. I. Restatement on Trusts and in § 337 of Scott on Trusts. Where the continuance of a trust is necessary to carry out a material purpose for which it was created the beneficiaries cannot compel its termination.

Mansfield's trust cannot be terminated, against the judgment of the trustees named by him, without destroying a material purpose—the only purpose for which he created the trust.

In § 337.2 of Scott on Trusts (Vol. III, p. 1841), the author, citing authorities, states: "Thus, if a trust is created under which the income is payable to one beneficiary for life and the principal is payable on his death to others, and the interest of the life beneficiary is inalienable, the trust will not be terminated even though

all the beneficiaries are *sui juris* and desire to terminate it.''

As between persons claiming under the will, the interest of Mrs. Clemenson in the income from the property held by the trustees must be regarded as inalienable. See *Driver* v. *Driver,* 187 Ark. 875, 63 S. W. 2d 274, where the validity of such provision for inalienability was upheld against the claim of a creditor.. The fact that the trustees may, in their discretion, give her more than she has a right to demand does not destroy the inalienability of the right given her by the will.

In § 337.4 of Scott on Trusts, the author discusses the termination of trusts created for the assured's support of a beneficiary, and where, as here, the trustees are given discretion. The rule is stated to be that the trustee cannot be compelled to terminate the trust because to do so would destroy the purpose of the settlor to provide for assured's support.

Mrs. Clemenson argues that in the case of *Pool, Trustee,* v. *Cross County Bank,* 199 Ark. 144, 133 S. W. 2d 19, it was held that a trust such as this, where the trustees have discretion to convey a part or all of the principal to the beneficiary, is not a ''spendthrift'' trust. Therefore, she argues, the beneficiaries have a right to force a termination of the trust. The Pool case is not authority for this proposition. In that case, the trustees had conveyed all of the property to the beneficiary and the question was whether the beneficiary now had a good title free from the trust—whether under the trust instrument the trustees had authority to convey to the beneficiary free from the trust. The court held that the trustees had such authority and that a good title passed. The result in the Pool case was correct—assuming the correctness of the interpretation of that trust instrument as to the authority of the trustees. But that case does not hold that because the trustees have discretion to encroach on the principal, in part or in whole, the beneficiaries may compel the termination of the trust. Circumstances might arise which might justify court

interference with the discretion of the trustees, but no such circumstances are argued here.

Appellant cites *Booe* v. *Vinson,* 104 Ark. 439, 149 S. W. 524, and *Black* v. *Bailey,* 142 Ark. 201, 218 S. W. 210. In the Booe case, the gifts over were held void and it was held that the entire estate vested at once in the beneficiary. It was said that the will in that case showed no attempt to create a spendthrift trust nor did the will show any unwillingness on the part of the testator for the beneficiaries to have absolute ownership and control in the event the gifts over should fail. The gifts over in the case at bar are not void, and Mansfield clearly expressed his desire that his daughter should not get the *corpus* unless and until his trustees deemed it advisable or necessary.

In *Black* v. *Bailey,* the trust property had ceased to be self-sustaining, produced no net income, and in order to make it self-sustaining a large expenditure was needed and no method was provided for raising the needed funds. No intent to create a spendthrift or discretionary trust was shown. "The only purpose seems to have been to hold the property intact for a period of years for the use and benefit of all his children." . . . "A continuation of the trust will perhaps work a confiscation of the property, or, at least, greatly burden it with incumbrances." Two members of this court dissented. None of the circumstances there are shown to exist in the case at bar. Here we have a clearly shown purpose to prevent the beneficiary from having any control over the property unless and until the trustees deemed it wise and this was the sole material purpose of the creation of the trust.

There appear to be conflicting clauses in the will with reference to the compensation of the trustees. The trustees have appealed from the decree of the Chancellor as to which clause should govern. They urge nothing here except that a different interpretation of the will might, under some circumstances, be better for all concerned. Such a consideration, if true, is not sufficient to justify this court in reversing the considered

decision of the chancellor as to the meaning of the will. While chancery cases are tried *de novo* in this court, this court accepts as correct the decisions of the lower court which the parties do not show to be wrong.

The decree is affirmed.

SMITH, J., did not participate in the consideration of this case.