**In re Carl W. HARTMAN and Judy Kay Hartman, Debtors.**

**Bankruptcy No. 89–13019M.**

United States Bankruptcy Court,
W.D. Arkansas,
Harrison Division.

June 1, 1990.

Claude R. Jones, Harrison, Ark., for debtors.

A.L. Tenney, N. Little Rock, Ark., for trustee.

Frank Bailey, Mountain Home, Ark.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On February 8, 1989, Carl W. Hartman and Judy Kay Hartman filed a petition for relief under the provisions of chapter 13 of the United States Bankruptcy Code. Their 36–month plan proposed weekly payments of $208.63. The debtors listed, as an exempt asset, Carl Hartman's interest in a retirement plan with his employer. On April 7, 1989, First Federal Savings & Loan Association (First Federal), which holds an unsecured claim, objected to confirmation. First Federal argued that the chapter 13 plan should not be confirmed because the retirement plan constituted non-exempt assets which, if liquidated in a chapter 7 proceeding, would result in greater payments to the unsecured creditors than proposed under the debtors' chapter 13 plan.

A hearing was held on September 15, 1989, and the case was taken under advisement. The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(L), and the Court has jurisdiction to enter a final judgment.

Carl Hartman (debtor) has been employed since 1977 by Claridge Products & Equipment, Inc., in Harrison, Arkansas. His employer has established the Claridge Products & Equipment, Incorporated Employees Profit Sharing Retirement Plan and Trust, which satisfies the requirements of the Employee Retirement Income Security Act of 1974 (ERISA). The plan is funded entirely by the employer out of its profits, and the trustee is the Mercantile Bank of Springfield, Missouri. The plan prohibits employee contributions. An employee is fully vested after ten years of participation. The plan provides that an employee may withdraw vested funds upon retirement at age 62, death, disability, or voluntary or involuntary termination of employment. An advisory committee, of which the debtor is not a member, decides whether an event justifies distribution under the terms of the plan. If the debtor were to terminate his employment, he would be entitled to a lump sum distribution of his vested benefits, payable approximately twelve months from his termination.

In accordance with ERISA specifications,[1] the plan contains an anti-alienation provision in section 8.05, which provides:

*Assignment or Alienation.* Subject to Code § 414(p) relating to qualified domestic relations orders, neither a Participant nor a Beneficiary shall anticipate, assign or alienate (either at law or in equity) any benefit provided under the Plan, and the Trustee shall not recognize any such anticipation, assignment or alienation. Furthermore, a benefit under the Plan is not subject to attachment, garnishment, levy, execution or other legal or equitable process.

Section 13.07 of the plan provides that the law of the state of the employer's principal place of business, which in this case is Arkansas, governs construction of the plan provisions.

Ninety-five employees participated in the plan in 1989. The debtor was 100% vested when he filed his bankruptcy petition in February of 1989. At the end of 1988, the

1. 29 U.S.C. § 1056(d)(1).

debtor's fully vested accrued benefits under the plan were $68,500.53.

First Federal argues that the debtor's vested interest in the plan should be considered property of the estate. The debtor argues that even if the plan funds were estate property, the estate would receive no greater rights than the debtor itself, and that the estate's interest in the funds would therefore be nominal.

Under 11 U.S.C. § 541(a), property of the estate includes all legal and equitable interests of the debtor in property as of the commencement of the case. In a chapter 13 case, estate property also includes property acquired by the debtor postpetition. 11 U.S.C. § 1306(a). Section 541(c)(1) provides that restrictions on the transfer of the debtor's interest in property will not prevent the inclusion of the property interest in the estate. Section 541(c)(2), however, preserves restrictions on transfer of a spendthrift trust to the extent the restriction is enforceable under "applicable nonbankruptcy law." *Samore v. Graham (In re Graham)*, 726 F.2d 1268, 1270–72 (8th Cir.1984); 4 *Collier on Bankruptcy* ¶ 541.23 (15th ed. 1990).

In *Graham*, the Eighth Circuit Court of Appeals held that the "nonbankruptcy law" referred to in section 541(c)(2) did not include ERISA, but instead referred to traditional spendthrift trusts as recognized by state law. 726 F.2d at 1271. *Accord, Daniel v. Security Pacific Nat'l Bank (In re Daniel)*, 771 F.2d 1352, 1360 (9th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488, 1490 (11th Cir.1985); *Goff v. Taylor (In re Goff)*, 706 F.2d 574, 580–82 (5th Cir.1983). In *In re Rodriguez*, 82 B.R. 74 (Bankr.W. D.Ark.1987), this Court held that, even though an ERISA–qualified plan did not fall within the section 541(c)(2) exception, the anti-alienation provision of the plan could qualify, on its own, as a valid spend-

thrift trust under state law.[2] *Accord, Goff,* 706 F.2d at 587; *In re Leimbach,* 99 B.R. 796, 799 (Bankr.S.D.Ohio 1989).

Generally, a spendthrift trust exists when the right of the beneficiary to future payments of income or principal cannot be voluntarily transferred by the beneficiary or reached by his or her creditors. *Graham,* 726 F.2d at 1271; *Halliburton Co. v. E.H. Owen Family Trust,* 28 Ark. App. 314, 319–20, 773 S.W.2d 453, 456 (1989). The fact that an anti-alienation provision satisfies the standards for ERISA qualification does not mean that it meets the state law standards for spendthrift trusts. *In re Atallah,* 95 B.R. 910, 916–17 (Bankr.E.D.Pa.1989).

The general principles regarding spendthrift trusts have been recognized by Arkansas courts. Under Arkansas law, a spendthrift trust is created:

> to provide support for designated beneficiary and to guard against his improvidence. It impounds the *corpus* of testator's estate in such a way that the *cestui* cannot receive it, or even the income therefrom except at certain intervals. All power of alienation of the trust fund is withheld from the *cestui* .... It is also protected against his creditors.... *Cestui* acquires no vested estate, but title and absolute control pass to trustee. Such trusts are valid in Arkansas, though not in England and certain states.

*Pool, Trustee v. Cross County Bank,* 199 Ark. 144, 149–50, 133 S.W.2d 19, 21–22 (1939) (citations omitted) (quoting P. Jones, *The Arkansas Law of Title to Real Property* § 923 (1935)). The alienation restraints must be expressly stated. *Miller v. Maryland Casualty Co.,* 207 Ark. 312, 324–26, 180 S.W.2d 581, 587–88 (1944).

The Arkansas Supreme Court found that the elements of a valid spendthrift trust were present where "the legal title and the absolute control of the property passed to

---

**2.** The numerous decisions discussing ERISA-qualified plans and traditional spendthrift trusts do not clearly distinguish whether a spendthrift trust is property of the estate but only of nominal value because the anti-alienation restriction is recognized by 11 U.S.C. § 541(c)(2), whether

the property is simply not part of the estate, or whether the trust is exempt property under 11 U.S.C. § 522. Read literally, section 541(c) does not exclude property held in a valid spendthrift trust from the estate but only provides that the spendthrift provision is enforceable.

the trustee for the sole purpose of creating, by use and investment, a permanent income for the maintenance of the [beneficiary] during life." *Bowlin v. Citizens Bank & Trust Co.*, 131 Ark. 97, 102, 198 S.W. 288, 289 (1917). The court also found a spendthrift trust to exist where the beneficiary was "only entitled to some stated income for life or a term of years, and the beneficiary [did] not have the right to voluntarily or involuntarily alienate his interest." *Cotham v. First Nat'l Bank of Hot Springs*, 287 Ark. 167, 171–72, 697 S.W.2d 101, 104 (1985). *See Clemenson v. Rebsamen*, 205 Ark. 123, 168 S.W.2d 195 (1943).

■ A spendthrift trust cannot be self-settled under Arkansas law; that is, a settlor cannot establish a trust under which he is to receive income as a beneficiary, while at the same time attempting to protect the trust assets from his creditors by the simple inclusion of a spendthrift clause. *Halliburton*, 28 Ark.App. at 321–22, 773 S.W.2d at 457–58. A self-settled trust enables the beneficiary to have dominion and control over the trust inconsistent with spendthrift principles. *Id.* Nevertheless, Arkansas courts have never addressed the question of whether a beneficiary's right to voluntarily terminate his employment and receive a distribution under a retirement plan constitutes control which would destroy the spendthrift nature of the plan.

■ Other bankruptcy courts [3] have held that a retirement plan authorizing an employee-beneficiary to receive benefits by terminating his or her employment lacks the safeguards of a true spendthrift trust. *Schechter v. Balay (In re Balay)*, 113 B.R. 429 (Bankr.N.D.Ill.1990); *Berman v. Mead (In re Mead)*, 110 B.R. 434, 439–40 (Bankr. W.D.Mo.1990); *Christison v. Slane (In re Silldorff)*, 96 B.R. 859, 864–65 (C.D.Ill. 1989); *Redfield v. Ansbro (In re Goldberg)*, 98 B.R. 353, 356 (Bankr.N.D.Ill. 1989); *In re Dagnall*, 78 B.R. 531, 534 (Bankr.C.D.Ill.1987); *In re Sundeen*, 62 B.R. 619, 620 (Bankr.C.D.Ill.1986); *In re Werner*, 31 B.R. 418, 421 (Bankr.D.Minn.

1983). *But see Goff v. Taylor (In re Goff)*, 706 F.2d at 589; *Blackwell v. Wallace (In re Wallace)*, 66 B.R. 834, 841 (Bankr.E.D. Mo.1986).

The Eighth Circuit Court of Appeals opinion of *In re Swanson*, 873 F.2d 1121 (8th Cir.1989), is instructive. In *Swanson*, the Court concluded that an ERISA–qualified plan did not qualify as a spendthrift trust under Minnesota law. Although the Court pointed out that the Minnesota courts had not specifically addressed the various requirements of a spendthrift trust, the Court analyzed the trust under "traditional" spendthrift trust characteristics and determined that it would not be valid under Minnesota law. Under the plan, contributions were partially made by the debtors and the debtors could exercise dominion and control over plan monies by receiving a refund of their contributions upon termination of employment. The Court stated:

> While this is a very limited right of control over the Funds, the ability of the beneficiary to control trust assets *in any way* is inimical to the policies underlying the spendthrift trust. We believe the Fund is actually a form of deferred compensation, whereas a spendthrift trust is generally used to provide for the maintenance and support of its beneficiaries.

*Id.* at 1124 (emphasis added).

Similarly, the Arkansas Supreme Court found a valid spendthrift trust where the settlor "provided against the anticipation of the income *in any manner.*" *Bowlin*, 131 Ark. at 102, 198 S.W. at 289 (emphasis in original). In analyzing Arkansas law regarding spendthrift trusts, the District Court for the Eastern District of Arkansas stated: "If, however, the beneficiary is in some way entitled to receive the corpus immediately or to call for it at any time, the restraint on alienation is invalid." *Hartsfield v. Lescher*, 721 F.Supp. 1052, 1057 (E.D.Ark.1989).

Although the debtor's access to his benefits under the retirement plan in this case

---

**3.** This Court addressed the spendthrift trust issue under Pennsylvania law and held that the ability to receive benefits upon voluntary termi-

nation of employment disqualifies a spendthrift trust. *Rodriguez*, 82 B.R. at 76.

is severely limited, the fact that the debtor has any access to the plan funds by simply submitting his resignation constitutes a power of alienation incompatible with the nature of a spendthrift trust. In addition, the conclusion that this retirement plan does not qualify as a spendthrift trust is compelled by the fact that the debtor would be entitled to a lump sum payment soon after termination of his employment. Deferring receipt of the payment until retirement age or limiting benefits to regular payments at stated intervals would be more consistent with a settlor's intent to "create, by use and investment, a permanent income" for the beneficiary with payments at "certain and reasonable intervals." *Bowlin*, 131 Ark. at 102, 198 S.W. at 289. *See Mead*, 110 B.R. at 439; *Sundeen*, 62 B.R. at 620. The debtor's ability to receive a lump sum distribution upon termination of his employment prior to retirement age undercuts not only the policies of spendthrift trusts but the policies of ERISA. One of the primary goals of ERISA was to ensure that retirement benefits would actually be available at retirement to provide regular income to retired employees and their dependents. H.R.Rep. No. 807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4676.

■ Since the debtor can voluntarily terminate his employment and receive benefits under this retirement plan, the plan does not qualify as a spendthrift trust under state law.[4] The anti-alienation provision of the retirement plan, therefore, is not enforceable in bankruptcy. The debtor offered no basis for claiming the retirement plan as exempt other than its spendthrift nature. The debtor's vested interest in the retirement plan is property of his chapter 13 bankruptcy estate and the full value of the interest, which the evidence established as $68,500.53, must be considered in complying with the requirements of 11 U.S.C. § 1325 in any amended plan. First Federal's objection to confirmation is sustained, and the debtor is granted twenty days to amend his chapter 13 plan consistent with this opinion.

IT IS SO ORDERED.

---

**4.** Any distribution received by the debtor prior to discharge would become part of his chapter 13 bankruptcy estate pursuant to 11 U.S.C. § 1306.