WHITE RIVER LIMESTONE PRODUCTS CO. *v.* MO.-PAC. RD. CO.

5-1453                                                310 S. W. 2d 3

Opinion delivered February 17, 1958.

Spitzberg, Bonner, Mitchell & Hays. and Beresford L. Church, Jr., for appellant.

Pat Mehaffy and W. A. Eldredge, Jr., for appellee.

CARLETON HARRIS, Chief Justice. This is an appeal from a judgment of the Circuit Court of Independence County, rendered summarily on the pleadings, certain stipulations of the parties, and upon the record, without the taking of any testimony.

White River Limestone Products Co., Inc., (hereinafter called White River), Arkansas Real Estate Co., Inc., and United Pacific Insurance Company are the appellants. Arkansas Real Estate owns certain mineral lands at Penter's Bluff, upon which White River has conducted mining operations. United, as surety, executed its bond securing the performance of White River under a track materials lease executed between White River, lessee, and appellee, Missouri-Pacific Railroad Company, lessor. Appellants, White River and Arkansas Real Estate,[1] instituted this suit against the Missouri-Pacific for damages allegedly suffered from a repossession by the railroad of the track materials covered by the lease, it being asserted that Missouri-Pacific had violated the terms of the lease, under which White River alleged it had been given an option to purchase said materials at the expiration of the lease period. Appellee filed an answer and counterclaim against White River, and cross complained against the insurance company for the expense incurred in repossessing the track materials. Subsequent thereto, appellee filed a Motion for Judgment against White River and United Pacific on the cross complaint, and for judgment for Missouri-Pacific against the complaint of White River and Arkan-

---

[1] United Pacific Insurance Company was a cross defendant in the lower court.

sas Real Estate upon the grounds hereinafter discussed. The trial court found in favor of appellee on the contentions raised, and sustained the Motion for Judgment. From the judgment of the court, comes this appeal.

For reversal, appellants rely upon three points, namely:

## I.

The lower court erred in treating the response of the appellants to the appellee's request for admissions as an admission on the part of the appellants that the appellee's cost of repossessing the track materials was $1,350.53.

## II.

The lower court erred in its holding that the appellants' action in the filing and subsequent voluntary dismissal of the action in the Chancery Court of Independence County, Arkansas, constituted a waiver of the appellants' right to exercise the option to purchase under the terms of the "Track Materials Lease".

## III.

The lower court erred in its holding that the measure of the appellants' damages, in accordance with the prayer of the Complaint, could only result in a judgment for $0.00, and that the Complaint therefore failed to state a cause of action.

We proceed to a discussion of each point in the order listed.

## I.

Appellee served appellants with a Request for Admission pursuant to Section 28-358 (Ark. Stats.) which provides, in part, as follows:

"After commencement of an action a party may serve upon any other party a written request for the admission by the latter of the genuineness of any rele-

vant documents described in and exhibited with the request or of the truth of any relevant matters of fact set forth in the request. * * * Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than 10 days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part, together with a notice of hearing the objections at the earliest practicable time. * * *''

The Request for Admission included eight different items, the first being as follows: "That the total costs of defendant, Missouri-Pacific Railroad Company's repossession of the materials covered by Exhibit 'A' attached to the Complaint and Cross-Complaint was $1,-350.53, itemized as follows: * * *'' Number 2, 3, 4, 5, 6, 7, and 8 were objected to on the grounds that they were wholly immaterial and irrelevant to the issue. To Number 1, appellant answered, "Plaintiffs are without knowledge of the correctness or exactness of defendant's request Number 1 as to costs of repossessing materials as per Exhibit 'A'. We hold the court's action in ruling that this response, in effect, amounted to an admission insofar as item one is concerned, was correct. The statute requires *a sworn statement* denying specifically the matters of which an admission is requested, or setting out in detail the reasons why same cannot be admitted or denied, or written objections thereto. The response was not sworn to, and we are of the opinion that this requirement is mandatory.[2] Our own U. S. Dis-

---

[2] This requirement relates to answers, and not to objections. As to items 2 through 8, there were objections.

trict Court for the Western District of Arkansas has so held. In *Sieb's Hatcheries, Inc.* v. *Lindley*, 13 F.R.D. 113, the court quotes from Barron & Holtzoff's Federal Practice and Procedure, Volume II, page 542, as follows:

"Affirmative action is required to avoid the requested admissions and if no answer or response is made within the time prescribed by the request, the facts in the request are deemed admitted. To avoid an unintended admission there must be, therefore, either a sworn statement denying specifically the matters as to which an admission is requested or setting forth in detail why those matters cannot be truthfully admitted or denied, or timely written objections."

In the case of *Beasley* v. *United States*, 81 F. Supp. 518, is found this language:

"To my mind the provision that the answers shall be verified is not a mere technicality and the failure to comply strictly with the requirement is not a mere oversight which can be waived or brushed aside. It is a very important and vital part of the procedure * * *." Nor does it appear that the present failure to verify the response was an oversight, since appellants make mention in their brief of the provision found in Section 28-359, in which it is provided that if the respondent presents a sworn denial of the truth of a matter of fact, and the party making the request proves such truth, the respondent may be required to pay the expense incurred in the making of such proof, plus reasonable attorney's fees. The action of the court did not constitute error.

## II.

On November 17, 1955, White River and Arkansas Real Estate Company instituted a suit against appellee in the Independence County Chancery Court, alleging the option of White River to purchase the track materials and their desire to purchase said materials for the fair market value. It was alleged that appellee refused

to sell the materials as agreed in the lease, and was threatening to repossess same. A temporary injunction, restraining Missouri-Pacific from repossessing said track materials until such time as the fair market value could be established by the court, was sought. The court orally granted the temporary restraining order, and directed that appellants file a bond, set the matter for final hearing for December 6, 1955, and directed counsel to prepare precedent. Instead of preparing precedent and providing the bond, appellants subsequently dismissed the suit without prejudice. Appellee thereafter repossessed the track materials, and appellants, in May, 1956, instituted the instant suit in the Circuit Court against appellee seeking damages for the alleged wrongful repossession. Appellee contends that appellants, by abandoning their opportunity to litigate the issues in the Chancery suit, waived their option. We do not agree. The action of appellants amounted to nothing more than the taking of a non-suit, which has been a permitted practice in this state for a long number of years. As stated in American Jurisprudence, Vol. 17, Sec. 95, page 164:

"It is a well-settled rule that a judgment or decree of dismissal not involving the merits, or without prejudice to the plaintiff is not a bar to a subsequent action or suit.   *   *   *"

Also, on December 15th, counsel for appellants wrote the chief operating officer of the Missouri-Pacific, advising that appellants "are requesting that the Court dismiss without prejudice the suit which these companies filed against the trustee for the Missouri-Pacific Railroad Company in the Chancery Court for Independence County, Arkansas, being case No. 2014," and enclosing a copy of precedent for such an order. The letter then reiterated that White River was ready and willing to purchase the track materials in accordance with the terms of the lease agreement, and further advised "in the event that trustee proceeds to remove these track materials, the White River Limestone Products Co., Inc., intends to file suit against him for damages." Appel-

lee was thus advised that White River was not abandoning its rights under the alleged option. Appellee also contends that White River waived any alleged option to purchase by its failure to tender performance in accordance with the terms of the lease. The lease provides "* * * upon conclusion of this agreement Lessee shall at Place of Delivery promptly deliver to Carrier all of Materials, with angle bars detached from rails, or pay to Carrier for any of Materials not so delivered their value determined pursuant to paragraph 1 hereof." Paragraph 1 set up the figure of $3,060.93 as the agreed value to be used in computing quarterly rental. The lease further provided "For the purpose of paragraph 2 hereof, the value of any of Materials not returned by Lessee on conclusion of this agreement shall be the established market value, as of the date of such conclusion, or materials of like pattern and weight, or in the absence of an established market value, the then value as established by Carrier's General Purchasing Agent for sale of similar materials, but not less than the agreed values shown above, for the use in computing rental." White River offered to purchase the materials and tendered the sum of $3,060.93. Appellee refused to accept this amount, stated there was no market value for such materials, and that the value established by the carrier's general purchasing agent was $7,560.32. White River refused to pay this amount. While we agree that the figure of $3,060.93 was only to be used in computing rental and was not necessarily the market value at the time of the expiration of the lease, we are unable, from the record before us, to presently find that there was no market value for materials of this type. The value as established by carrier's general purchasing agent, under the terms of the lease, was only to apply if no market value could be established. This is a question of fact, upon which neither side had opportunity to present any proof. We think appellants are entitled to the chance to show by competent testimony that there was an established market value, and that such value did not exceed the amount tendered by appellants.

They were only required to tender the amount of $7,-560.32 if there was no established market value.

Nor do we agree that the lease is void for uncertainty. The phrase "established market value as of the date of such conclusion" is specific and definite. It is not an "agreement to make an agreement" for the parties state clearly the basis for exercising the option.[3] We conclude that the court erred in holding that the filing and subsequent voluntary dismissal of the action in the Chancery Court by appellants, constituted a waiver of White River's right to exercise the alleged option.

## III.

Appellee asserts that there could be no recovery under the prayer of the complaint, wherein appellants allege their measure of damage as the cost of replacement. Appellee points out that appellants' cited cases refer to instances where the destroyed property was owned by the parties seeking recovery, while here the property was owned by appellee. Paragraph 10 of the complaint alleges "as a result of said wrongful repossession, the plaintiffs have suffered damages to the above described real property in the amount of $3,000." In the first place, the question of damages cannot be determined until it first be ascertained whether the tender made by appellants was sufficient to permit them to exercise their option and buy the materials. If it should develop that the tender represented the then market value, then it would seemingly follow that the tracks were wrongfully removed, and an action for damages might well lie. However, assuming that a cause of action was not properly stated, it would appear that the proper

---

[3] According to Black's Law Dictionary, (Fourth Edition):
"The market value of an article or piece of property is the price which it might be expected to bring if offered for sale in a fair market; not the price which might be obtained on a sale at public auction or a sale forced by the necessities of the owner, but such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to sell and a purchaser who desires to buy but is not compelled to take the particular article or piece of property."

avenue of attack by appellee would have been by demurrer. Summary judgments are not generally favored by the courts, and a pleading should be liberally construed. *Lytle* v. *Payette-Oregon Slope Irrigation District,* 175 Ore. 276, 152 Pac. 2d 934; *Metal Door and Trim Co.* v. *Hunt,* 170 Okla. 240, 39 P. 2d 72, 101 A. L. R. 350. From American Jurisprudence, Vol. 41, Sec. 335, page 520: ''Moreover, a motion for judgment on the pleading may not be used as a substitute for a demurrer where the pleadings are amendable so as to state a cause of action or defense.''

Because of the errors herein set out, the judgment of the Circuit Court is reversed, and the cause remanded with directions to set aside the judgment rendered, and further proceed in a manner not inconsistent with this opinion.