BROWN *v.* LEWIS.

5-2077                                                334 S. W. 2d 225

Opinion delivered April 4, 1960.

[Rehearing denied May 9, 1960]

*John F. Gibson,* for appellant.

*William H. Drew,* for appellee.

GEORGE ROSE SMITH, J. This is a proceeding under the statute to vacate a default decree after the term, for unavoidable casualty. Ark. Stats. 1947, § 29-506. The defendants, who had filed an answer in the case, assert unavoidable casualty in that their attorney, Mr. Gibson, did not know that the case was set for trial on the day that the default decree was rendered. The chancellor concluded that no unavoidable casualty had been shown and therefore refused to vacate the decree.

In the original case the plaintiff, represented by Mr. Drew, filed suit to quiet her title to sixty acres of land. The regular chancellor, Judge Merritt, announced his disqualification, and Mr. W. K. Grubbs, Sr., was elected special chancellor. As of April 5, 1959, the special chancellor overruled Mr. Gibson's demurrer to the complaint and granted the defendants ten days for further pleading.

The special chancellor and the two attorneys met in the courtroom on April 23. Mr. Drew asked for a default judgment, as the defendants had not filed a pleading within the time allowed. This request was denied for the reason that Mr. Gibson had not received a copy of the order overruling his demurrer, and he was granted until April 25 to file his answer, which was to be a general denial. The answer was later filed within this additional time.

After the special chancellor denied Mr. Drew's request for a default judgment the three men discussed the selection of a date for trial. Both Mr. Grubbs and Mr. Drew understood that May 18 was definitely agreed upon as the trial date. Later that day, April 23, Mr. Grubbs prepared an order reflecting the court's action and reciting that the case was to be tried on May 18, but Mr. Gibson did not receive a copy of that order. On May 18 Mr. Drew appeared in court with his client and some twenty witnesses, but Mr. Gibson and his clients did not appear. The decree recites that after waiting

four hours for the defendants to appear the special chancellor heard the case upon the plaintiff's evidence and found the issues in her favor.

At the hearing upon the complaint to vacate the decree Mr. Grubbs and Mr. Drew testified as we have indicated, that on April 23 they and Mr. Gibson selected May 18 as the day for trial, and the presiding chancellor, Judge Launius, so found. Mr. Gibson does not question the good faith of Mr. Grubbs and Mr. Drew in the matter; he simply states that he did not understand that any date for trial was definitely selected on April 23. Upon this basis it is argued that there was actually a misunderstanding between counsel, which constitutes an unavoidable casualty. *Baskin* v. *Aetna Life Ins. Co.*, 190 Ark. 448, 79 S. W. 2d 724.

If the record contained nothing except the testimony that we have mentioned we might well be in a position to reconcile the statements of these three honorable members of the bar by concluding that a misunderstanding occurred. Unfortunately there is an insurmountable obstacle in the way of such a disposition of the case.

After the filing of the motion to vacate the decree the plaintiff served a request that the following facts, among others, be admitted by the defendants: "That at the hearing of April 23, 1959, the Special Chancellor, the Hon. W. K. Grubbs, Sr.; solicitor for the defendants, W. G. Brown and Vivian Brown, the Hon. John F. Gibson; and solicitor for plaintiff, Elza Lewis, William H. Drew, all checked their calendars and found that this cause would be tried May 18, 1959." To this request the defendants filed an unverified response stating that they were not present on April 23 and "cannot truthfully admit or deny" the requested admission of fact.

The statute, so far as it is relevant here, is explicit in providing that a request for an admission is deemed admitted unless the party to whom the request is directed files a sworn statement either denying the matter or setting forth in detail the reasons why he cannot truthfully admit or deny the matter. Ark. Stats., § 28-358.

In *White River Limestone Products Co.* v. *Mo.-Pac. R. Co.*, 228 Ark. 697, 310 S. W. 2d 3, we considered a situation identical to the present one and held that an unverified response does not comply with the statute and hence amounts to an admission of the request. It follows that in the case at bar the appellee is entitled to insist, as she does, that the agreed setting of the case stands as an admitted fact. Thus it is beyond our authority to make a contrary finding.

The appellants' remaining arguments do not establish a valid ground for reversal. It is contended that the chancery court was not legally in session on May 18, because Judge Merritt had entered an order recessing court until May 25. But this order did not really conflict with the special chancellor's order setting the trial for May 18, and in any event the statute now provides that the chancery court is always in session, that two or more chancery courts of the same circuit may be concurrently in session, and that an order fixing the time and place when the court will be in session does not preclude the court from transacting business at other times and places. Ark. Stats., § 22-408.1.

It is also contended that the special chancellor was without power to set the case for trial until after the issues had been joined by the filing of the defendants' answer. Act 70 of 1957, Ark. Stats., § 27-1719; and Act 244 of 1957, regulating the practice in this particular chancery circuit. We do not find in either act any language suggesting that the parties and the court cannot agree upon a trial date before the filing of the answer or that a trial held pursuant to such an agreement is a nullity.

Affirmed.

Holt, Robinson, and Johnson, JJ., dissent.

J. Seaborn Holt, Associate Justice, dissenting. As I read the evidence in this case, I am convinced that, on trial *de novo* here, the preponderance of the testimony supports appellants' contention and I would reverse the decree with directions to set aside the default decree for what was, I

think, in effect, an unavoidable casualty. A more complete synopsis of the testimony is to the following effect: Mr. Brown, one of the appellants, on the day the decree for default was rendered against him and his wife, was ready, willing and able to defend had he known that court was to be held on that day. His wife, Mrs. Brown, co-appellant and appellant here, testified in corroboration of her husband, that on the day the default decree was rendered against her, she was ready, willing and able to defend had she known that court was to be held on that day. The attorney for the Browns, Mr. Gibson, testified that he did not appear and defend because it was his impression and understanding that the case would not be heard until the court reconvened in regular session on May 25, 1959, and further that he was under the definite impression that no agreement had been reached between himself, the special chancellor, Mr. Grubbs, who rendered the default decree, and opposing counsel, Mr. Drew, as to a date for trial of the case. The special chancellor, Mr. Grubbs, who presided at the hearing at which the default decree was rendered, testified that on April 23, 1959, there was a discussion of fixing the date for the trial of the issues in this case: "That date was fixed at May 18, 1959. This date was first fixed between Mr. Drew and Mr. Gibson. I asked them to agree on a date for trial. That date was agreeable to me. This date was fixed the morning of the 23rd (April 1959). I am sure that Mr. Gibson and yourself (Mr. Drew) and myself agreed on the date May 18, 1959 . . . I did not specifically instruct that a copy of the decree be sent to you. I have no knowledge whether you received a copy or not. I did not ask the sheriff to call you on that day. I did not have any knowledge that you had known of the actual entry of the Order on April 23, 1959 . . . Mr. Gibson mentioned several dates when he had various things scheduled. *But I remember the 18th day was the only day proposed unless it was the Monday and for some reason that Monday was turned down. I don't remember why. The 18th was on Tuesday. After looking at my calendar May 18th is on Monday.* It was my recollection that there was some reason or another that we couldn't hear it

on Monday. That is my memory. It didn't take very long to agree upon a date. I remember it was just a Monday that we couldn't agree upon. There is no doubt in my mind as to the agreement of May 18, 1959." [Emphasis ours].

Mr. Drew, attorney for appellee, Elza Lewis, testified that: "On April 23, 1959, Mr. Gibson and Mr. Grubbs and myself met here with reference to a motion that I had filed for a default judgment . . . We discussed various dates. We finally agreed upon the 18th of May. Mr. Grubbs checked his calendar and found that there were no conflicts for the 18th of May and the case was ordered to be tried on that date by him . . . We tried one phase of the Marques case and immediately after Mr. Gibson, myself and Mr. Grubbs heard the motion for default judgment. It seems to me that we heard the Marques case until about lunch time and I believe Mr. Gibson left around noon."

The record further reflects that counsel for both sides had just finished part of a long and involved contested divorce case when the purported agreement was reached. It was shortly before noon and both parties were anxious to get away when the impromptu meeting was called. It further appears that the regular chancellor (Merritt) had adjourned court until May 25, 1959. All of which, it seems to me, would clearly show that a misunderstanding as to the trial date occurred between the parties. It further appears that the only positive testimony as to the date agreed upon as *Monday*, May 18, 1959, was that of opposing counsel who took the default judgment.

The majority, in their opinion, candidly admit that the evidence is sufficient to show a misunderstanding between the parties but go further and say that this court is bound by an "insurmountable obstacle in the way of such a disposition of the case." This "insurmountable obstacle" being the unsworn answer to a request for admissions and in support, they rely on 228 Ark. 697, 310 S. W. 2d 3, the case of *White River Limestone Products Co.* v. *Mo.-Pac. Rd. Co.*, which held that response unsworn to amounts to an admission of the request. A reading of the decision in the above case shows that the court quoted from and relied

upon several federal court cases which stated the federal procedure, and that our procedure is substantially the same as that of the federal courts. In *Ark.-Tenn. Distributing Corp.* v. *Breidt et al.,* 110 Fed. Supp. 644, we find this language: ''It must be taken into account that Harry Breidt denied having been served the request for admission. The answers to the requests were signed by Charles Handler and sworn to by Jacob Breidt only. It is true that failure to deny is tantamount to an admission, but it is equally true under this rule as under the others, that technical considerations will not be allowed to prevail to the detriment of substantial justice. Barron and Holtzoff, *Federal Practice and Procedure,* Vol. 2, Section 837.''

It seems to me that simple and substantial justice requires that these appellants be not denied the right to a trial of their lawsuit because of a clear mix up and misunderstanding as to the trial date when even the trial judge, Mr. Grubbs, was himself so confused that he didn't know if the 18th was on a Monday or Tuesday, and that the 18th was the only day proposed; that he remembered there was some reason that the case couldn't be tried on a Monday which was, in fact, the 18th. Nor do I agree that appellants should be bound by the highly technical requirement of their failure to verify the response set out in the majority opinion. As pointed out by the federal court above: ''Technical considerations will not be allowed to prevail to the detriment of substantial justice.''

I would reverse.