CANNADAY v. FIRST NATIONAL BANK OF FAYETTEVILLE.

5-3301 382 S. W. 2d 589

Opinion delivered October 12, 1964.

*Crouch, Blair & Cypert,* for appellant.

*Wade & McAllister, Dickson, Putman, Millwee & Davis, Pearson & Pearson, Greenhaw & Greenhaw,* and *Russell Elrod,* for appellee.

PAUL WARD, Associate Justice. In August, 1958 the City of Fayetteville entered into a contract with C. R. Cannady, d/b/a Cannady Construction Company (hereafter referred to as "Cannady") to make certain improvements to the City Airport. The contract provided primarily for certain excavations and for putting in place large amounts of stone and aggregate in constructing additions to the runway. Before the work was finished trouble arose, and a multitude of legal maneuvers followed. Since several pleadings and parties are involved, it seems expedient to set out below a list of identifications.

(a) Cannady employed, as sub-contractor, James A. Ulrich (hereafter called "Ulrich") to do most of the work—especially the stone and aggregate items. To help finance his undertaking Ulrich executed to the First National Bank of Fayetteville (hereafter called "Bank") a note for $15,500 which amount was advanced to him. Later Ulrich abandoned the undertaking and Cannady employed the Tune Construction Company (hereafter called "Tune") to complete the work. Ulrich purchased materials from the McClinton Brothers Company (hereafter called "McClinton") in the amount of $7,104.53 for which McClinton was not paid. Cannady was required to make a statutory performance bond, and it was executed by the Employers Mutual Casualty Company (hereafter called "Mutual").

(b) The Bank sued Ulrich for a balance of $13,500 on his note and caused a writ of garnishment to be issued against Cannady alleging he held certain credits due Ulrich. Later the Bank had a receiver appointed for Ulrich. In his answer Cannady contended that he could not determine whether or not he would owe Ulrich, or how much, until a settlement was made with the City and Ulrich. The City filed an intervention alleging that it owed Cannady a balance of $9,836.66 and paid that amount into court. Cannady then answered that he was entitled to an additional $25,000 because the City was purporting to pay on the cubic contents of the stone and aggregate in place on the runways when, under the terms of the contract, the City should pay on the basis of loose stone and aggregate in the trucks. Tune claimed he was due $1,003.58, plus penalty and attorney's fee from Mutual and Cannady. For material furnished Ulrich, McClinton claimed $7,104.53 and penalty and attorney's fee from Mutual and Canaday. Mutual denied all liability, and particularly denied liability for penalties and attorneys' fees.

The issues set out previously were presented to the trial court sitting as a jury. After a lengthy trial the court made, in substance, the following findings of fact and law.

*Findings of Fact.* The Bank was entitled to judgment against Ulrich for $13,900, including interest; Tune was entitled to judgment for $1,003.58 against Cannady and Mutual; McClinton was entitled to judgment for $7,104.53 against Cannady and Mutual; of the $9,836.66 deposited in court, $9,401.41 goes to Ulrich (or rather to the receiver) and the balance of $435.25 goes to Cannady; and, when the Bank garnished Cannady the City owed Cannady the sum of $9,401.41.

*Findings of Law.* (a) The Bank's lien (by virtue of garnishment) was prior to any other lien.

(b) Cannady's claim of $25,000 against the City is denied.

(c) Tune is entitled to judgment against Mutual and Cannady for $1,003.58 and from Mutual a 12% penalty and $350 attorney's fee.

(d) McClinton is entitled to judgment against Mutual and Cannady for $7,104.53 and from Mutual a 12% penalty and $500 attorney's fee.

For a reversal appellants, Cannady and Mutual, rely on certain specified points which we now discuss in the order presented by them.

*One.* Cannady and Mutual first contend there is no substantial evidence to sustain the court's finding that Cannady had in his possession goods, chattels, money, credits and effects belonging to Ulrich in the amount of $9,401.41 (as held by the court). We are unable to agree.

In the record we find the following testimony: All labor and work done by Ulrich (including work done by Tune and material furnished by McClinton) amounted to $98,433.65; Cannady paid to Ulrich personally a total of $38,317.41 and for other claims (such as for aggregate, piping, equipment rental, etc.) the sum of $18,715.68— making a total of $57,033.09. Add to the last figure $9,836.66 deposited in court by the City and we have a grand total of $66,369.75 accounted for out of $98,-433.65. This leaves the sum of $31,563.90 unaccounted for by Cannady. Certainly Cannady was in a better position than anyone else to explain what use was made of money. It is our conclusion, therefore, that there was substantial evidence to support the finding of the trial court that Cannady owed at least as much as $9,836.66 to Ulrich. The trial court also had a right, in this connection, to consider the fact that Ulrich had borrowed $15,500 from the Bank to finance him as a sub-contractor.

*Two.* It is next contended that the court erred in giving the Bank a prior lien on the $9,401.41 paid into court. This contention appears to be based on the fact that the Bank's writ of garnishment was served on Cannady before the money was paid by the City into court. Under the general rule announced by this Court, we think

it makes no difference that Cannady did not know at the time the writ was served against him *how much* he owed Ulrich so long as he actually did owe him (as we have just held). In the case of *Harris* v. *Harris,* 201 Ark. 684, 146 S. W. 2d 539, this Court quoted with approval from 28 C.J. 129, § 171, the following:

"Under some statutes it has been held that a debt not presently payable is not subject to garnishment. But generally debts contracted, although not presently payable or matured, but which will certainly become payable in the future, may be reached. And this, although the terminology of the statute is that claims or debts 'due' may be garnished, the term 'due' being taken in its larger sense as importing merely an existing obligation, without reference to the time of payment."

The *Harris* case has been cited with approval in *Miller* v. *Maryland Casualty Co.,* 207 Ark. 312 (p. 318), 180 S. W. 2d 581 (p. 584); *Coward* v. *Barnes,* 232 Ark. 177 (p. 179) 334 S. W. 2d 894 (p. 896); and *Gossett* v. *Merchants & Planters Bank,* 235 Ark. 665 (p. 667), 361 S. W. 2d 537 (p. 538). It is not denied that the Bank was first to have a writ of garnishment filed against Cannady. The lien thus created took effect at the time the writ was served. See: *Bergman* v. *Sells & Co.,* 39 Ark. 97 and the *Gossett* case, *supra.*

*Three.* We do not agree with appellants that the court erred in assessing penalties and attorneys' fees to Tune and McClinton. It is first insisted by appellants that there was no demand for payment made on Mutual, but the record shows that on March 17, 1961 Mutual was advised of the extent of the claims. Mutual was asked to affirm or deny the claim. The failure of Mutual to deny the claim under oath amounted to an admission. See: *White River Limestone Products Co.* v. *Mo.-Pac. Rd. Co.,* 228 Ark. 697, 310 S. W. 2d 3; *Brown* v. *Lewis,* 231 Ark. 976, 334 S. W. 2d 225; and 10 Ark. Law Rev. 439, 454 (1956). Also, although two months elapsed, Mutual made no effort to settle the claim out of court.

*Four.* Finally it is insisted that the cause should be reversed because the court misinterpreted the prime contract, and thereby used the wrong method to determine payments due for stone and aggregate used on the runways. We do not agree.

The prime contract between the City and Cannady is long and complicated but it suffices to quote the following portion:

"The quantity of crushed aggregate base course to be paid for shall be the number of cubic yards of material *placed,* bonded, and accepted in the completed base course." (Emphasis added)

Appellants contend the City should pay for the cubic for the cubic yards loose in truck, while the City contended it should pay for materials measured in place. It is apparent the former method would mean more money to Cannady.

The trial court held the contract was not ambiguous and found that the ". . . materials for base and sub-base furnished under the written contract should be measured by compact in place measurement rather than loose truck load measurement". We agree that the above mentioned portion of the contract was not ambiguous, and likewise agree the trial court interpreted it correctly.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.